17412

Edward TUCKER, Appellant, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent

(103 S. E. (2d) 272)

*Messrs. Murchison & West,* of Camden, *for Appellant,*

*Messrs. Weinberg & Weinberg,* of Sumter, and *deLoach, Wilson & deLoach,* of Camden, *for Respondent,*

April 14, 1958.

STUKES, Chief Justice.

This appeal is from the direction of verdict in favor of the respondent insurer because of the breach by the insured of the following provision of an automobile liability policy:

"Assistance and Cooperation of the Insured. The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the accident."

The insured's car left the road, turned over and his cousin-passenger, who is the plaintiff-appellant in the present action, was injured. He brought suit against the insured and recovered judgment by default. It is upon that judgment that the instant action was brought against the insurer.

The insured lives in a remote rural section of Kershaw County, in which the accident occurred on Nov. 25, 1954. His post office address is R. F. D. Ridgeway, which is in an adjoining county. He did not notify the insurer of the accident and its first knowledge of it was a letter from the attorneys for appellant. They commenced action against the insured on December 7th upon a verified complaint in which it was alleged that Tucker's injuries were proximately caused by negligent and reckless speed and failure of the insured to keep his car under proper control.

The insurer's agents had difficulty locating the insured. Registered letter was written him on January 13, 1955 advising him of investigation of the accident, reminding him of his obligation to cooperate, and requesting that he telephone collect to the office of the insurer's adjuster in Rock Hill and make appointment with him. There was no response to this letter and an agent of the insurer went to the insured's home on January 21 and obtained a signed claim report in which the insured stated that he was driving about 65 miles per hour when the rear tire blew out, which caused the upset, and that he was fined for reckless driving. On February 4, this agent and the insurer's adjuster visited the insured again at his home and a detailed statement was prepared by his dictation and afterward read to him. It recited, as had the accident report, that a tire blew out, causing the accident, although the tires were good; that in the Highway Patrol report it was said that insured tried to miss a hog, quoting from the statement, "but actually there was no hog and the accident happened when my tire blew out." The adjuster wrote the statement with pen and the agent signed as a witness; both of them testified at the trial of this action. When completed the statement and the pen were handed to the insured and he took them as if to sign the statement, but his mother, who was present, intervened and hold him not to sign the statement because a lawyer had instructed him not to sign anything until he (the lawyer) had "O.K'd it." Thereupon, after holding them a few minutes the in-

sured handed the statement and the pen back to the adjuster, without having signed. The latter reminded the insured of his obligation to cooperate with the insurer and told him that the insurer would be in further contact with him. The insured did not deny this incident in his testimony, and his mother did not testify; but he did deny that the lawyer made the statement to him.

The Highway Patrol report of the accident, dated November 27, 1954, was admitted in evidence by consent. It contained the following: "Stated he (the insured driver) tried to miss hog. He was at such a fast speed he lost control of the car and it left the road and turned over."

Respondent wrote the insured by registered letter, dated February 9, and gave him the name and office address of a prominent law firm in Columbia which had been employed to defend the actions against him. The following is quoted from this letter:

"These attorneys will give the matter all necessary attention, and when they want you to call at their office with reference to this case, they will notify you. When you hear from them, please comply with all requests that they may make. As the duly authorized representatives of your insurance carrier, these lawyers under the terms of your policy, are entitled to your complete cooperation throughout the handling of this litigation and we will appreciate their having the benefit thereof. * * * We wish to point out to you at this time that under the policy provisions we, as your insurers, and our duly authorized representatives are entitled to your full and complete co-operation in our investigation and/or handling of this matter. Failure on your part to so cooperate may result in our denial of coverage to you for the accident in question."

The senior member of this firm of attorneys, who is a lawyer of the highest repute, testified at length, on which account, and properly, he did not appear ·as counsel in the case. 19th Canon of Professional Ethics, Rule 33 of this

court. His firm was employed in December 1954 and he obtained an extension of time to answer the complaint in the action of Tucker, plaintiff, against the insured. He wrote the latter on February 26, 1955, advising him that the case was set for trial on March 4 and that he (the attorney) would be at Camden courthouse on February 28 and would call on the insured to discuss the case and have him sign the answer. Insured was not at the courthouse and the attorney did not locate him. The case was continued beyond the March term.

The attorney returned to Camden on March 8 and, after difficulty and delay, found the insured's home in the country. There he was told by the mother of the insured that the latter was at work at the DuPont plant near Camden. There the attorney found him and they conferred in the former's automobile. A proposed answer was shown the insured and he was requested to sign the verification. The verification of the complaint necessitated verification of the answer. Code of 1952, sec. 10-603. It was explained to the insured and he held it in his hand, as if reading it. However, he declined to sign the verification and said in substance, "I have just decided I am not going to have any more to do with this case." The attorney repeated his former explanation of the necessity of defense of the action and of insured's verification of the answer; he explained the requirements of the policy that the insured cooperate in the defense, file answer, go to court, give evidence, etc.; but the insured was adamant in his refusal to sign the verification.

On March 12 the attorney wrote the insured a registered letter which contained the following:

"While in Camden, the writer also requested that you read over and verify the Answer which we had prepared for you in the suit by Edward Tucker, but you declined to verify the Answer and informed the writer that you did not intend doing anything further about that particular lawsuit. We are passing this information on to the insurance company, and will let you know their reaction, but again call your

attention to the fact that under the provisions of your insurance contract, you are required to give your cooperation, which, in this instance, you have not done."

Again, on March 25 the attorney wrote the insured by registered mail, as follows:

"This is to advise that our client, State Farm Mutual Automobile Insurance Company, is disclaiming coverage with respect to the law suit brought against you by Edward Tucker in the Court of Common Pleas for Kershaw County, South Carolina, arising out of the accident of November 25, 1954. Accordingly, we are herewith returning to you the copy of the Summons and Complaint which was served upon you, so that you can make your own arrangements through your own attorney, at your own expense, to defend the action."

Finally, on June 13 the attorney wrote the insured the following:

"On March 25, 1955, we wrote you advising that upon instructions of our client, State Farm Mutual Automobile Insurance Company, we were withdrawing from representation of the defense in the above case, and suggested that you promptly arrange to get other representation. We have not heard from you, and on receipt of a copy of the Court roster for the current term, which lists us as attorneys for you, we concluded to file a Petition requesting that we be released by the Court. This is to advise that we will present the Petition to the Honorable G. Duncan Bellinger, Presiding Judge, at the Court House in Camden at ten o'clock A. M., on Wednesday, June 15, 1955. Copy of the petition is enclosed herewith."

The receipt of none of the foregoing letters which were written by respondent and its attorney was denied; indeed, signed return receipts of those which were registered were in evidence. There was no reply to, or compliance with, any of them.

Agreeable to that last above quoted, the attorney procured from the court an order releasing him and his firm from representation of the insured in the action of Tucker, plaintiff. Thereafter judgment by default was taken, which is the basis of the action in hand.

The answer which the attorney had prepared, and proposed to the insured to verify, was, in effect, a general denial of the material allegations of the complaint. The attorney testified that the insured made no objection to the contents of the answer and made no suggestion thereabout; he did not say that he could not read or understand it. He only said, and that several times, that he just did not want to have any more to do with the lawsuit.

Counsel for appellant contends that the insured was justified in refusing to verify the answer because he could not truthfully deny the allegations of the complaint, citing *Meehan v. Commercial Cas. Ins. Co.,* 166 S. C. 496, 165 S. E. 194. But that was not the reason for the refusal. The insured repeatedly told the attorney he would not sign the verification because he did not want to have anything more to do with the action for damages against him by his cousin-passenger.

He was placed on the stand by appellant as a witness in reply and answered three times on direct examination as to why he refused to verify the answer, as follows:

"1. Yes sir, I asked him (the attorney) was the insurance company going to pay for the hospital bill, and he said he didn't know, and I told him I wasn't going to sign it, because I was responsible for it.

"2. I asked him was the company going to pay the hospital bill, and he said he didn't know, and I said I didn't want to sign something that wasn't true, because I would be responsible for it.

"3. I didn't want to sign that I wasn't responsible for the hospital bill and things, because I was driving the car that had the accident, and that's the reason I didn't sign it."

And on cross-examination, when asked why he did not sign the statement prepared at his home by the insurer's adjuster, insured testified as follows:

"Q. Why didn't you sign it?

"A. I asked him if the insurance company was going to pay the bills, and he said he didn't know, and I told him I couldn't sign it; that I might do something to sink myself.

"Q. So you weren't going to sign anything, unless they promised to pay the hospital bill, isn't that right?

"A. Yes, sir.

"Q. And that's why you didn't sign the paper that Mr. Nelson gave you, isn't that right?

"A. Yes, sir."

The last question and answer refer to the proposed answer which the insured refused to verify. Appellant's contention of insured's reason for refusal is not supported by the testimony, even by that of the insured. He testified that he was of third grade education and could sign his name. Certainly, the evidence negatives any imposition upon him. Although unimportant here, it is interesting to note that he testified on cross-examination that the cause of his accident was the blowout of a rear tire.

Appellant states the question on appeal as follows, quoting from the brief: "Did the evidence justify the trial judge's directing a verdict for the respondent on the grounds that there had been such a breach of (the) 'cooperation clause' of the liability policy as to relieve the respondent of responsibility thereunder?"

Consideration of the evidence is conclusive that the only reasonable inference from it is that the insured completely failed to comply with his obligations under the pertinent provision of the policy, whereby respondent was released from liability. Direction of verdict was proper because there was no issue of fact for the jury.

Appellant cites and relies upon *Meehan v. Commercial Cas. Ins. Co., supra,* 166 S. C. 496, 165 S. E. 194. It is

readily distinguished on the facts. There the insured gave to the insurer immediate notice of the accident, called on its attroney and twice afterward personally visited its office before answer was due in the pending action against him. The proposed answer was never presented to the insured for verification; here it was, and verification refused without valid reason given for the refusal. Other facts which demonstrate the almost utter lack of cooperation in the case at bar are stated above. Clearly and certainly there was not "reasonable" cooperation, referred to in the *Meehan case;* the evidence did not make a jury issue thereabout. Referring to the cited case again, there are here no "perplexing problems of fact" or any "contradictory testimony thereabout," which would require an issue relating to "cooperation" to be submitted to the jury.

Compare *Walker v. New Amsterdam Cas. Co.,* 157 S. C. 381, 154 S. E. 221, where the insurer ineffectually attempted to allege fraud upon the part of the insured. See also *Geiger v. Aetna Ins. Co.,* 215 S. C. 144, 54 S. E. (2d) 549, which involved a cooperation clause in a theft insurance policy. The legal relation of the parties to the instant action is the same as that of the parties in *Crook v. State Farm Mut. Auto. Ins. Co.,* 231 S. C. 257, 98 S. E. (2d) 427, which involved a similar insurance contract, and the well considered opinion by Mr. Justice Moss in that case is enlightening and helpful here.

The subject of the effect and enforcement of a cooperation clause in a liability policy is annotated in 72 A. L. R. 1446, 98 A. L. R. 1465, 139 A. L. R. 771, and 34 A. L. R. (2d) 264, where a wealth of authorities may be found. Also see 5A Am. Jur. 135 *et seq.,* Automobile Insurance, sec. 134 *et seq.*

In the decision of this appeal we do not reach the point of whether failure of cooperation of the insured must be prejudicial to the rights of the insurer in order to release it from liability, simply because there can be no doubt of the existence of prejudice under the facts of the case. 5A Am.

Jur., sec. 134, *ante*. The trial judge reached the right result in his ruling from the bench, as follows:

"There is nothing to show that the defendant, or that Harris, rather, was in any way overreached. There is no collusion and no fraud alleged here. But there, to my mind, was a refusal to sign that verified answer, unless he was assured that the hospital bills would be paid. As I say, it isn't a question of whether or not they were prejudiced, if they were, although I don't know how they could be more prejudiced than by someone failing to sign the verification of the answer, because the complaint was verified, and, therefore, under our Code every subsequent pleading is required to be verified, and he simply tied the hands of the insurance company in the defense of that action. If I am wrong in my holding that he could not have been charged with perjury, if he had signed that verification, that might go out altogether—it might not be a substantial ground upon which to rest my decision in this case—but there is other evidence here of where they attempted to get Harris to come in. My recollection is that they wrote him several letters, and there is no denial that he got the letters, but he refused to answer them. In other words, he didn't show any cooperation at all and wouldn't show any unless he could be assured that the hospital bills would be paid. That's why he was refusing to sign anything, and under the law in all these cases that have been handed me and the authorities cited, I can't see where there is any conflict in the evidence here to go to the jury, to show whether he did not cooperate."

To the foregoing there should be added the repeated declarations by the insured to the attorney provided him by the insurer that he (the insured) had decided to have nothing to do with the action for damages against him; and he did not, which resulted in default judgment.

Moreover, appellant has not argued the absence of prejudice to the insurer; but contends in effect that the insured

rendered reasonable cooperation, which cannot be inferred from the evidence.

Affirmed.

TAYLOR, OXNER, LEGGE and MOSS, JJ., concur.