**Raleigh W. ANDREWS, Plaintiff,**

v.

**CENTRAL SURETY INSURANCE COMPANY, Defendant.**

**Raleigh W. ANDREWS, Plaintiff,**

v.

**COMMERCIAL UNION INSURANCE . COMPANY OF NEW YORK, Defendant.**

**Civ. A. Nos. 8655, 66–283.**

United States District Court
D. South Carolina,
Florence Division.

Aug. 11, 1967.

---

James P. Mozingo, Darlington, S. C., D. Kenneth Baker, Darlington, S. C., Phillip H. Arrowsmith, Florence, S. C., for plaintiff.

N. Laurie O'Farrell, Willcox, Hardee, Houck, Palmer & O'Farrell, Florence, S. C., for defendant.

SIMONS, District Judge.

These actions were commenced by plaintiff Raleigh W. Andrews in the Court of Common Pleas of Florence County, South Carolina against defendants, Central Surety Insurance Company and Commercial Union Insurance Company of New York. Both actions were duly removed to this court pursuant to the provisions of Title 28, U.S.C.A. § 1332. In the suit against defendant Central Surety Insurance Company plaintiff seeks to recover the amount of a judgment over and above his insurance coverage obtained against him in a wrongful death tort action in the state court, together with interest, attorney's fees and costs. In the companion action plaintiff seeks to recover from defendant Commercial Union Insurance Company of New York the amount of a judgment over and above his insurance coverage obtained against him in a survivalship (conscious pain and suffering) tort action in the state court, together with interest, attorney's fees and costs.

Subsequent to the commencement of these two actions defendant Central Surety Insurance Company merged with defendant Commercial Union Insurance Company of New York. Therefore, in actuality and by stipulation only one defendant is involved, and the defendant insurance companies herein will be referred to hereinafter as "defendant".

Plaintiff's contentions as set forth in his complaints are summarized briefly as follows: On or about June 5, 1963, defendant issued to him its automobile liability insurance policy providing coverage for personal injury and death in limits not to exceed $10,000 for each person and $20,000 for each occurrence; defendant reserved unto itself the exclusive right to settle or compromise all claims against plaintiff within the limits of its policy. On November 17, 1963 while defendant's policy was in full force and effect his insured automobile was involved in a head-on collision with another motor vehicle being driven by one Allen T. Green; a sailor was driving plaintiff's automobile while plaintiff was a passenger therein; both of them were drinking alcoholic beverages; the sailor drove his car across the center line of the highway into the left lane of traffic and into head-on collision with the Green vehicle. As a result of the collision Green's vehicle

caught fire and he was burned to death. The true facts surrounding the collision were brought out at the coroner's inquest which was attended by defendant's insurance adjuster who forwarded a copy of the inquest testimony to defendant. During January 1964 the attorney employed to represent Green's estate in its claims against plaintiff offered to settle all claims for $9,950.00 within a certain specified time limit. This limit was extended for two additional ten-day periods ultimately expiring February 14, 1964. Plaintiff and his personal attorney urged defendant's insurance adjuster Goodwyn and defendant to settle the claims for such amount, since they considered the offer very reasonable under the facts and circumstances of the case; and they expressed concern that verdicts much greater than his coverage would probably be obtained against plaintiff upon trial of the cases. Defendant failed and refused to settle within the time granted by Green's attorney; thereafter on February 17, 1964 suits for wrongful death and conscious pain and suffering were commenced against plaintiff. At that time the settlement offer had been withdrawn and the cases could not then be settled within his insurance coverage. Trials of the two cases resulted in judgments against plaintiff totalling $144,-000.00. Defendant was guilty of negligence, fraud, and bad faith in failing to settle the claims within the time specified and within plaintiff's policy limits, and he demands judgment against defendant in the amount of $134,000.00 which represents the excess of the judgments over his insurance limits, together with interest, costs and a reasonable attorney's fee for plaintiff's counsel for their services in this action.

In its answer defendant admits the status of the parties, the issuance of its policy to plaintiff as alleged, and the collision and death of Allen T. Green. It further admits the offer of settlement made by the attorney for Green's estate and the granting of extensions of time to effect such settlement within policy limits. However, the answer specifically denies that defendant was guilty of any negligence, fraud, or bad faith in its failure to settle the claims against plaintiff; and alleges that after the Green suits were commenced defendant's attorneys offered the full amount of its coverage, which offer remained open for approximately a year, but was refused by claimant.

The matter was tried before the court without a jury on April 24, 1967 at Florence, South Carolina. The issues for determination are: (a) Was defendant guilty of negligence, bad faith or fraud in failing to settle or compromise the Green tort claims against plaintiff so as to make it liable to him? (b) If defendant is liable to plaintiff, what are the elements and measure of damages which he is entitled to recover from defendant?

In accordance with Rule 52(a) of Federal Rules of Civil Procedure the court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1) Plaintiff is a resident of the State of South Carolina; defendant is incorporated and has its principal place of business in one of the states other than South Carolina; and the amount in controversy in both cases, exclusive of interest and costs, exceeds the sum of $10,-000.00.

2) Defendant issued to plaintiff its standard automobile liability policy No. 298AB35–51–71 on June 5, 1963 with limits of liability for bodily injury and death of $10,000 for each person and $20,000 for each occurrence, which was in full force and effect on November 17, 1963. Under the terms and conditions of subject policy defendant reserved the exclusive right to defend, compromise and settle any claims against the insured arising under the policy. Rogers who was driving plaintiff's car with his permission, and at his request while plaintiff was present therein was an "insured" under the "omnibus clause" of the policy.

3) On or about November 17, 1963 at about 1:30 a. m. Allen T. Green, a twenty-

six year old employee of the Florence Morning News, died as a result of an automobile collision which occurred on Highway No. 301 between Florence and Olanta, South Carolina while Green was traveling toward Olanta to deliver newspapers. He was married, had one son and earned approximately $60 per week. He had a life expectancy of 44.90 years under the South Carolina Mortuary Statute, § 26–12, as amended, of the 1962 South Carolina Code of Laws.

Plaintiff's automobile which was covered by defendant's insurance policy was being driven on the occasion by a sailor named Rogers whom plaintiff had met at a night spot. Both had drunk alcoholic beverages to excess, and Rogers was operating plaintiff's automobile at the latter's request. The collision occurred when Rogers recklessly and wantonly attempted to pass another vehicle, drove plaintiff's automobile across the center line into its left lane and into head-on collision with the Volkswagen automobile which Green was driving on its proper right-hand side of the highway in a careful and cautious manner. After the collision the Volkswagen caught fire while Green was pinned inside. He burned to death before he could be removed from the automobile. The collision and ensuing death of Green occurred as a proximate result of Rogers' gross negligence, recklessness, wilfulness, and wantonness. Defendant's liability policy covered effectively the operation of plaintiff's automobile on the occasion in question.

4) The estate of the deceased, Allen T. Green, employed George W. Keels, Esquire, a prominent attorney of Florence, South Carolina, to represent it in its claims against plaintiff resulting from his death in the collision.

5) The collision and resulting death of Green was duly reported to defendant and it assigned the investigation and handling of the matter to A. R. Goodwyn, Jr., its local adjuster in Florence, South Carolina.

6) On November 26, 1963 the coroner of Florence County held an inquest into Green's death. Plaintiff and other witnesses who had knowledge of the circumstances surrounding the collision testified. The testimony was transcribed and was introduced in evidence in this case as plaintiff's exhibit 1. Defendant, the Green Estate, and the State of South Carolina were represented by counsel at the inquest. Defendant's adjuster Goodwyn was also present at the inquest, acquired a copy of the transcript of the testimony and forwarded it to defendant's Columbia office recommending that he be given authority to settle. Goodwyn also took a detailed written statement from plaintiff which substantiated the inquest testimony that the driver of his automobile was clearly at fault in bringing about the collision and resulting death of Green.

7) On December 2, 1963 Adjuster Goodwyn made a full report of his investigation of the collision (plaintiff's exhibit 10) to Walter B. Mungo, Claims Representative for defendant in Columbia, South Carolina. Goodwyn summarized the testimony and findings of the coroner's inquest, verified defendant's coverage of plaintiff's automobile, and advised that he had divulged to Attorney Keels who represented the Green estate that there was only minimum coverage. He concluded that this was a case of liability on the part of its insured, Andrews, reporting that "this was definitely a joint drunken venture on the part of Raleigh W. Andrews, Graham Rogers and Leonard J. Whisenant, the latter also being a passenger in the Andrews automobile."

8) Shortly after the inquest Attorney Keels talked with Goodwyn about a settlement. Keels told Goodwyn that he would settle all claims against plaintiff for $9,950.00. Goodwyn made him a counter offer of $9,850.00. On January 9, 1964 Keels wrote plaintiff (plaintiff's exhibit 7) advising that he had been employed to represent the Green estate; that he had made a thorough investigation of the accident, and had been authorized by his client to settle the case for $9,950, provided his offer were accepted within five days from the date of his letter. When Andrews received Keels' let-

ter he delivered it to Goodwyn who by his letter of January 13, 1964 (plaintiff's exhibit 12) forwarded the same to defendant's Claims Representative in Columbia.

9) On January 10, 1964 Goodwyn made a supplemental report to defendant's Claims Representative and forwarded him a copy of the official Highway Department report of the accident, calling his attention to the following violations on the part of the insured driver: Driving too fast for conditions; failing to yield right-of-way; passing unlawfully; driving under the influence of intoxicants. He also stated: "Attorney Keels is getting a little restless. Please let me have your advices".

10) Keels again wrote plaintiff on January 23, 1964 (plaintiff's exhibit 8) reminding that he had not received any answer to his previous letter, and again reiterated his offer to settle for $9,950.00. He further advised plaintiff that he was giving him ten days more before commencing suit to effect such settlement; that after the institution of suit the case could no longer be settled for that figure and he would hold plaintiff responsible for any sum recovered at trial. Plaintiff first took this letter to Goodwyn who read it; he then delivered it to his personal attorney, Phillip H. Arrowsmith.

11) Within the ten day deadline set forth in Keels' letter Arrowsmith contacted Keels and determined that no one representing defendant had been in touch with him about settling the case. He thereupon obtained a ten day extension of the settlement offer until February 14, 1964. On February 4, 1964 he wrote Goodwyn (plaintiff's exhibit 15) advising that he had been retained to represent plaintiff personally in connection with the Green estate claims. He also informed the adjuster that plaintiff had delivered Keels' letter of January 23rd to him, wherein the settlement offer of $9,950.00 had been extended for a further period until February 14, 1964. He also urged defendant to consummate settlement on the offered basis saying that "Mr. Andrews feels that this settlement would be in his best interest inasmuch as

it is his considered opinion that if the case were tried a verdict, in all probability, would be rendered against him in an amount much greater than this settlement figure and Mr. Andrews does not wish to become personal [sic] responsible for a judgment in excess of his liability coverage afforded through the referred to company."

12) Green's dependents were entitled to benefits under the South Carolina Workmen's Compensation law since Green was in the course and scope of his employment at the time of his accidental death. These benefits were waived by Green's dependents in favor of bringing the tort suits for wrongful death and conscious pain and suffering because the circumstances surrounding the collision made out a clear case of liability on plaintiff's part. Also, Keels had a different fee basis with the Green estate if the cases were settled without litigation, than if suits were brought.

13) Defendant made no contact with Keels nor took any other steps to meet his deadline of February 14, 1964 to settle the claims against plaintiff for $9,950.00, other than its counter offer of $9,850.00, which Keels rejected.

14) Plaintiff's liability was clear, Green's damages were great. All these facts were well known to defendant. Any reasonable appraisal of the situation required an immediate settlement while such could be accomplished within the policy limits.

15) Thereafter, on February 17, 1964 Keels commenced wrongful death and survivalship actions for the Greens against plaintiff in the Court of Common Pleas for Florence County. He was thereafter no longer receptive to any proposal to settle the cases within defendant's policy limits.

On February 17, 1964 plaintiff's attorney forwarded copies of the summons and complaints in the State Court actions which had been served personally on plaintiff that date to Adjuster Goodwyn. He also told Goodwyn that he was representing plaintiff individually since the

demands in the complaints were in excess of his liability coverage.

Goodwyn forwarded to defendant's Claims Representative Mungo these suit papers by letter dated February 18, 1964. His office copy of this letter (plaintiff's exhibit 14) bore the following handwritten notations:

"February 18, 1964, called Keels—offered $9850.00.

"February 20, 1964, offered Keels—$9950.00."

16) On March 3, 1964 defendant referred the state court suits to its local Florence counsel who a few days later offered Keels the policy limits to settle the cases. He rejected the offer. Defendant's attorneys thereupon answered the complaints setting up a general denial as its only defense. Defendant's local counsel testified that when they investigated the circumstances surrounding the collision it appeared to them to be a case of liability. They had not been retained nor had any responsibility in connection with the situation until after the suits were instituted.

17) The trial of the wrongful death action resulted in a jury verdict and judgment against plaintiff in the sum of $133,000.00 actual and punitive damages, of which $10,000 was paid by defendant under its policy liability. The balance of $123,000 remains unpaid. The trial of the conscious pain and suffering action resulted in a jury verdict and judgment against plaintiff in the sum of $11,000, no part of which has been paid and is still outstanding.

18) The only property owned by plaintiff subject to levy and execution was an undivided one-half interest in a residence which he owned jointly as a tenant in common with his wife. Acting upon the advice of his personal attorney, plaintiff by deed dated January 8, 1964 conveyed his interest in this property to his wife for "love and affection for my wife and the sum of Five ($5.00) Dollars". The fair market value of plaintiff's one-half interest in the property is $7,750.00. Keels brought suit against plaintiff in the state court to set this conveyance aside as fraudulent as soon as he learned of the transfer. This case is still pending in the Court of Common Pleas for Florence County.

## CONCLUSIONS OF LAW

■■ The court has jurisdiction of the parties and of the subject matter of this action. The substantive law of the State of South Carolina is applicable to the issues. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ Under South Carolina law a liability insurer has the duty to compromise a claim against its insured if the circumstances make it the reasonable thing to do. An insurer who acts unreasonably and is guilty of negligence, or fraud, or bad faith in its failure or refusal to settle claims against its insured within its policy limits is responsible for damages resulting from such negligence, or fraud, or bad faith. Tiger River Pine Co. v. Maryland Cas. Co., 163 S.C. 229, 161 S.E. 491 (1931); Tyger River Pine Co. v. Maryland Cas. Co., 170 S.C. 286, 288, 170 S.E. 346 (1933);[1] American Casualty Co. of Reading, Pa. v. Howard, 187 F.2d 322 (4th Cir. 1951).

■ The exaggerated circumstances surrounding the collision in this case leave no room for doubt that the negligence, recklessness, wilfulness and wantonness of defendant's insured was the sole proximate cause of the collision and the resulting death of Green, and such

---

1. 170 S.C. at page 291, 170 S.E. at page 348 the South Carolina Supreme Court in holding that "negligence" of insurer, unaccompanied by fraud or bad faith, in failing to settle gave rise to a cause of action stated:

"We think this question was decided by this Court by the opinion on the appeal from the order overruling the demurrer. (163 S.C. 229, 161 S.E. 491). The opinion thus states the issue: 'Does the complaint state a cause of action either in contract or in tort for breach of contract, or of bad faith *or negligence* (emphasis added) in the performance of the contract?'"

circumstances demanded an immediate settlement to protect plaintiff's interests. Such facts and circumstances were forcefully brought to defendant's attention at a time when it had full opportunity to compromise and settle all claims against plaintiff within its policy limits. It surely knew, or reasonably should have known, that its failure to settle would most probably result in excess judgments against its insured. Its unwarranted attempt to "save something" out of its coverage and its inexcusable failure to settle violated its contractual duties and obligations to plaintiff. The court can only conclude that such irresponsible or selfish action on defendant's part amounted not only to negligence, but also to bad faith. Tyger River Pine Co. v. Maryland Cas. Co., supra; See also Annotation, 40 A. L.R.2d at page 196.

In every liability insurance contract there is an implied covenant of good faith, and it is common knowledge that many insureds receive protection by settlement without litigation. An insurer should not be permitted to forsake or abandon the interests of its insured and to further its own interests by rejecting an opportunity to settle within the policy limits when the circumstances compel such action on its part as the only reasonable course to follow, *unless* the insurer is also willing to absorb any losses resulting from such conduct to its insured. Therefore, under the foregoing facts and circumstances this court without any hesitation concludes that defendant is liable in damages to plaintiff.

The court cannot agree with defendant's contention that, since plaintiff's only asset which can be levied upon is the one-half interest he owned in his home the measure of damages should be limited to the fair market value of such property, $7,750.00.

Plaintiff is entitled to recover from defendant the full amount of the judgments now outstanding against him, including interest and costs. Tiger River Pine Co. v. Maryland Cas. Co., supra; Tyger River Pine Co. v. Mary-

land Cas. Co., supra; Lee v. Nationwide Mutual Ins. Co., 286 F.2d 365 (4th Cir. 1961); Anderson v. St. Paul Mercury Ind. Co., 340 F.2d 406 (7th Cir. 1965); Chitty v. State Farm Mut. Auto. Ins. Co., 38 F.R.D. 37 (E.D.S.C.1965); Gaskill v. Preferred Risk Mut. Ins. Co., 251 F.Supp. 66 (D.Md.1966). In order for plaintiff to recover it is not necessary that he pay the excess judgments. Neither is it a defense to plaintiff's claim that he has insufficient assets for their payment. Pickett v. Fidelity and Casualty Co., 60 S.C. 477, 38 S.E. 160, 629 (1901); Walker v. New Amsterdam Cas. Co., 157 S.C. 381, 154 S.C. 221 (1930); Lee v. Nationwide Mut. Ins. Co., supra; Chitty v. State Farm Mut. Auto. Ins. Co., supra; Gaskill v. Preferred Risk Mutual Ins. Co., supra.

Plaintiff seeks also to recover a reasonable attorney's fee for his attorneys in prosecuting these actions in this court, asserting that such expense is recoverable since defendant's wrongdoing made it necessary for him to employ the services of attorneys to commence and prosecute this action. Such attorney's fees are not a proper element of damages which may be recovered in this action. Attorney's fees are not recoverable at common law unless expressly provided for by contract; and the general rule prevails that such fees may be recovered in an action of this type only by virtue of a statute, South Carolina has no such statute. American Fidelity and Casualty Co. v. Greyhound Corp., 258 F.2d 709 (5th Cir. 1958); Christian v. Preferred Accident Ins. Co., 89 F.Supp. 888 (N.D. Cal.1950). See also Annotation, 40 A.L. R.2d § 8, page 190, et seq. Maryland Casualty Co. v. Elmira Coal Co., 69 F.2d 616 (8th Cir. 1934), cited by plaintiff, is inapplicable to the facts of this case since plaintiff's complaints herein seek attorney's fees for "services to him in this action". No assertion was made nor any evidence offered that he incurred any personal attorney's fees in the defense of the tort actions in the state court proceedings, although the record does show that his personal attorney participated

in their defense. In *Elmira Coal Co.* the court approved the award of attorney's fees for plaintiff which were incurred in the original tort action without statute when it concluded that the bad faith of the insurer in failing to settle the tort action against its insured was the proximate cause of the bringing of such tort suit and that the insured's attorney's fees in defending itself was a proper element of damages resulting therefrom.

Plaintiff is entitled to recover from defendant the sum of One Hundred Thirty-four Thousand ($134,000.00) Dollars, the total amount of the excess judgments, together with interest thereon from the date of entry of such judgments in the office of the Clerk of Court of Common Pleas for Florence County, together with the costs of this action.

In accordance with the foregoing findings of fact and conclusions of law, it is hereby,

Ordered that plaintiff have judgment against defendant for the sum of One Hundred Thirty-four Thousand ($134,-000.00) Dollars, together with interest from the dates of the entry of the judgments in the state court tort actions, and together with the costs of this action. It is, further

Ordered that any payment by defendant to plaintiff pursuant to the entry of any judgment be paid into the registry of this court, and that the disbursement of such funds shall be made only upon further order of this court upon a proper showing that the interests and rights of the parties are fully protected, and that plaintiff will not receive any portion of such funds in cash.[2]

Let judgment be entered accordingly.

The Clerk of Court in addition to serving by mail a certified copy of this order upon the attorneys for the parties shall also serve by mail a certified copy upon George W. Keels, Esquire, of Florence, South Carolina, attorney for the estate of the deceased, Allen T. Green.

And it is so ordered.

2. In view of the highly reprehensible, reckless and wanton conduct of plaintiff and the driver of his automobile which resulted in the untimely and inexcusable death of Allen T. Green, the court is gravely concerned with the possibility that Andrews himself may benefit pecuniarily and materially, in addition to the satisfaction of the judgments in excess of his insurance coverage against him. Plaintiff's benefitting from his own wrongful and criminal conduct would be a miscarriage of justice and could not be countenanced or indulged by this court. When George W. Keels, Esquire, attorney for the Green estate was testifying in this case he was questioned at length by the court as to whether there was any collaboration between him and plaintiff's counsel in these actions whereby plaintiff would receive any part of the recovery in cash from defendant in the event the court decided in his favor. Mr. Keels not only assured the court that there was, and would be, no such collaboration or cooperation between him, his client, and the plaintiff; but he also stated that any recovery obtained in this action would be levied upon and would inure solely to the benefit of the estate and beneficiaries of Allen T. Green. Such representation and assurance on the part of Mr. Keels has been given considerable weight in this court's deliberations and determination.