Carolyn B. HODGES, as Assignee of William S. Fanning and Birobal Corporation, Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

Ray C. HODGES, as Assignee of William S. Fanning and Birobal Corporation, Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

Civ. A. Nos. 78–1210–6, 78–1212–6.

United States District Court,
D. South Carolina,
Charleston Division.

March 7, 1980.

Michael T. Cole, Andrew Kenneth Epting, Jr., Charleston, S. C., for plaintiffs.

Claude M. Scarborough, Jr., Columbia, S. C., for defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

HEMPHILL, Chief Judge.

Before this court are cross motions for summary judgment in two companion cases which seek to recover, *inter alia*, $200,000.00 in damages from an insurer as indemnification for a pair of default judgments rendered in state court, allegedly as a result of the insurer's failure to defend and/or timely settle. Plaintiffs in these actions are the assignors of the insureds, William S. Fanning and Birobal Corporation, and were also the plaintiffs in the state court actions. This unusual twist wherein plaintiffs occupy the shoes of their former adversaries, was precipitated by a collision between a Birobal Corporation motor vehicle, driven by Fanning, and a pedestrian, Ray C. Hodges, on June 27, 1975, in Charleston, South Carolina. Plaintiffs filed suit and obtained default judgments for $200,000.00 in two state court actions when Fanning's insurer, State Farm, failed to timely file an Answer to the Complaints. In settlement of that claim, Fanning and Birobal assigned to plaintiffs their causes of action in tort and contract against State Farm for failure to defend and/or failure to timely settle, which entitles plaintiffs to recovery in excess of the policy limits if negligence or bad faith is proven.

As discovery has been completed, this court has before it all essential evidence, in the form of affidavits, depositions, documents, the transcript of the hearing to set aside the default judgment, and the orders of the trial court and the Supreme Court of South Carolina upholding the default judgment. From the materials presented to this court, it is evident that the following facts are not in dispute.

Fanning was driving along Carterette Avenue in Charleston on the night of June 27, 1975 following a friendly gathering at a local lounge at which Fanning admits he had consumed eight to ten beers.[1] An eye-witness reported that the car was traveling at 45 miles per hour in a 15 mile per hour zone when he suddenly veered across the center of the street and up onto the grass on the opposite side of the street from his proper lane.[2] Hodges was standing a few feet from the road, in his own yard, when he was struck by Fanning. The impact knocked Hodges out of his shoes and through the air about thirty feet.[3] Hodges suffered a fractured femur, lacerations and abrasions. Fanning was observed to be weaving back and forth after the accident and smelled strongly of alcoholic spirits.[4]

State Farm began its investigation of the accident soon thereafter. Fanning was difficult to locate, resulting in State Farm sending to him a reservation of rights letter informing him that coverage could later be denied for failure to cooperate with the insurer.[5] The investigation soon revealed the less than optimal legal consequences of their insured's conduct, and inspired State Farm to reserve the entire policy limit of $15,000 for possible payment in settlement of a claim which could easily result in punitive damages.[6]

Due to a conflict in the testimony of the attorney for the Hodges at that time, Thomas Dewey Wise, and that of State Farm's agents, it cannot be determined for purposes of this motion whether, and to what extent, settlement negotiations were heard. However Wise did write State Farm that he had heard the policy coverage was for minimum limits and that he would proceed to file suit immediately since the policy limits would not be sufficient.[7] Wise later stated that he did not begin to evaluate the case for settlement purposes until the default case went to the Supreme

1. Fanning dep., p. 10; Interview with Almers, p. 4.

2. Free affidavit.

3. Affidavit of C. T. Powell, the investigating officer.

4. Affidavits of Powell and Virginia Jameson.

5. Affidavits of Almers and Ledford.

6. Ledford Affidavit.

7. Wise deposition, Ex. 2.

Court.[8]  Plaintiffs, in their depositions, confirm that no thought was given to settlement during the early stages of the lawsuit due to the minimal amount which the insurance company could be expected to contribute.[9]  Subsequently, on July 9, 1975, less than two weeks after the accident, Hodges filed his action for personal damages and his wife filed suit for loss of consortium.

When Fanning was served, he immediately turned the papers over to attorney Malcolm Crosland, Esquire, asking him to look them over and deliver them to State Farm.[10]  However, Fanning denies he ever hired Crosland as his attorney[11].  Crosland contacted State Farm which sent William Almers to pick the papers up from Crosland and deliver them to J. W. Cabaniss, Esquire, the attorney for State Farm.[12]  The trial judge found that Cabaniss prepared Answers in each of the cases and forwarded these to Mr. Crosland under letter dated July 17, 1975.  Cabaniss then departed on vacation on July 25, 1975 and did not return to his office until August 7, 1975.  Crosland received the Answers in the next few days, reviewed them and signed the papers.  Crosland states he then asked his secretary to return the papers to Cabaniss as he had been requested to do.  According to Crosland's affidavit, "Mrs. Bates had an illness in her family and missed several days from work."  Crosland discovered the Answers had not been returned on July 31, 1975.  He personally carried them over to Mr. Cabaniss' law offices.  The Default Order was properly taken on July 30, 1975 and on August 1, 1975, Cabaniss moved the court to reopen the proceedings.

At the August 8th hearing on the motion, Crosland and Cabaniss presented affidavits, and orally recited Fanning's version that Hodges had walked into the side of his car, although they were unable to present an affidavit from Fanning due to his failure to cooperate.  On September 13, 1975, South Carolina Circuit Judge Clarence Singletary issued his order which found an absence of excusable neglect on the part of Fanning's attorneys and that no meritorious defenses existed to plaintiffs' causes of action.  About this time State Farm, tendered its policy limits to plaintiffs but was refused.  Judge Singletary's order upholding the default was appealed to the South Carolina Supreme Court which affirmed the trial court's finding as to inexcusable neglect without reaching the issue of meritorious defenses.  *Hodges v. Fanning and Birobal Corporation*, 266 S.C. 517, 224 S.E.2d 713 (1976).

The case was remanded to Judge Singletary who referred the damage issue to a Master in Equity.  Cabaniss appeared before the Master, on behalf of defendants, but his participation was limited to cross examination of plaintiffs' witnesses.[13]  The Master recommended an award of $175,000, actual and punitive damages to Ray Hodges, and $25,000 to his wife.  Judge Singletary adopted the recommendation and ordered such an award on July 25, 1977.  When settlement negotiations failed with State Farm, plaintiffs took the assignments of Fanning and Birobal's causes of action on which these two cases are based.

Defendant's motion for summary judgment is based in part upon several defenses which would defeat plaintiffs' recovery in total without a trial on the merits.  Since a decision in favor of defendant on any of these defenses would render all other questions moot, consideration will be given to these issues first.

Plaintiffs' third cause of action alleges defendant breached an implied contractual covenant, existing between it and plaintiffs' assignors, by failing to properly defend them.  Defendants urge that Fanning's

---

**8.**  Wise deposition, p. 76.

**9.**  Depositions of Ray Hodges, p. 19; Carolyn Hodges, p. 8.

**10.**  Fanning deposition, p. 15.

**11.**  Fanning deposition, p. 16.

**12.**  Cabaniss deposition, p. 67; Almers' affidavit.

**13.**  S.C. Code § 15–35–320 (1976) allows the referee to "hear the allegations and evidence of the plaintiff."

failure to cooperate with the investigation and hearing of the lawsuit breached the contract of insurance and discharged defendant from the duty to defend. Specifically, defendant submits that the failure of Crosland to return or file the Answer, the failure of Fanning to submit or return the affidavit for use in the hearing on the motion to set aside the default, and various other unspecified instances of failure to cooperate, constitute a prevention or hindrance by the insured under the contract.

■ In South Carolina the failure of the insured to comply with the obligations of the contract will release the insurer from liability. *Tucker v. State Farm Mutual Insurance Company*, 232 S.C. 615, 103 S.E.2d 272 (1958); *Pharr v. Canal Insurance Co.*, 233 S.C. 266, 104 S.E.2d 394 (1958); *Crook v. State Farm Mutual Automobile Insurance Company*, 231 S.C. 257, 98 S.E.2d 427 (1957). But avoidance of coverage will only be allowed where the insurer has shown that the failure to cooperate prejudiced the insurer's defense of the case. *Squires v. National Grange Mutual Ins. Co.*, 247 S.C. 58, 145 S.E.2d 673; *Pharr v. Canal Insurance Co., supra.*

■ The contract in this case made Fanning's cooperation a term of the policy, thus the question presented is whether State Farm can prove prejudice. This court thinks not.

Under the contract of insurance the insurer is obligated "to defend, with attorneys selected by and compensated by the company, any suit against the *insured* alleging such bodily injury . . . but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient." [14] Because of the large sums of money involved, and to insure the orderly and proper disbursement of the funds, the courts have construed such clauses as granting the insurer the exclusive control of the litigation, to the point of requiring the insured to surrender all con-

trol over his own defense. *Allstate Ins. Co. v. Wilson*, 259 S.C. 586, 193 S.E.2d 527 (1972); *American Cas. Co. v. Timmons*, 352 F.2d 563, 569 (6th Cir. 1965); *Duke v. Hoch*, 468 F.2d 973, 978 (1972), motion den. 475 F.2d 761 (5th Cir. 1973); *Appleman*, 7C *Insurance Law and Practice* § 4681 (1979). The right to control the lawsuit is determinative of this issue.

This court, considering the evidence in the light most favorable to defendant, finds no conduct on the part of Crosland which relieved State Farm of its duty to answer, or which prevented State Farm from answering in a timely fashion. Crosland's excuse that his secretary, Mrs. Marilyn Bates Chouinard, was absent from work for a few days has been contradicted by Mrs. Chouinard who states she was not absent from work at the time Crosland claimed and that she performed all duties promptly. Accepting her version, State Farm was still under an obligation to track the answer to insure a timely filing, or in the alternative to draft new pleadings and file them. However, in the cover letter transmitting the pleadings to Crosland, no due date for the answer was mentioned. [15] Further, in a meeting with Crosland some six to seven days before the deadline, Cabaniss did inquire about the pleadings but did not discuss the need for immediate action with Crosland. [16] Cabaniss departed for vacation, having made no specific arrangements concerning the filing of an answer other than to ask a member of his office to review correspondence and take whatever actions were necessary. [17] Since the primary, and indeed, exclusive, responsibility for the handling of the suit was State Farm's, Crosland's actions do not excuse State Farm's failure to answer and defendant fails to prove prejudice to its defense of the suit.

Nor did the failure of Fanning to furnish an affidavit for the hearing to set aside the default, prejudice defendant's case. First, Fanning's version of the incident was com-

---

**14.** Section I, coverage B, of the Birobal policy.

**15.** Cabaniss deposition, p. 9.

**16.** Cabaniss deposition, p. 10.

**17.** Cabaniss deposition, p. 11.

municated to the judge by his attorneys. Second, his version flew in the face of the overwhelming weight of the evidence and might have been subject to impeachment as to credibility on the basis of a Florida bank fraud conviction.[18] Finally, of decisive force to this court is the finding of the trial court, subsequently affirmed by the Supreme Court, that the default should be upheld since the defense attorneys had shown no excusable neglect. Under state law, Fanning's testimony as to a meritorious defense would be irrelevant absent excusable neglect.

■ Defendant has raised a similar defense to the negligence causes of action, arguing that Crosland's negligence should be imputed to his client Fanning, thus defeating his assignors' recovery on grounds of contributory negligence. There is a dispute of fact as to whether Fanning ever retained Crosland, but assuming he did, this court believes that the Supreme Court of South Carolina would refuse to impute a third party's negligence to defeat the recovery of a plaintiff.

Defendants contend that Fanning had the right to control the conduct of his attorney, therefore he should be responsible for the acts of his agent. See cases cited in 65A C.J.S. *Negligence* § 157 (1955). Clearly, Fanning has already suffered the consequences of both of his attorneys' acts when the default judgment was entered against him. The question, as recognized by the Supreme Court of Colorado in *Coerber v. Rath*, 164 Colo. 294, 435 P.2d 228 (1967), is whether Fanning, through his assignee, should be punished a second time for his misplaced confidence. This court thinks there are limits implicit in the doctrine of imputed negligence which prevent its application in a second suit.

One legal encyclopedia has labeled imputed negligence as "a fiction of the law finding small favor with the courts; it is of artificial creation, and must in particular cases yield to reason and practical considerations." 65A C.J.S. *Negligence* § 157. And

in the *Restatement of Torts*, 2d (1965) § 485, legal scholars have recognized that imputed negligence has been applied only in certain circumstances not relevant here. Comment (a) states:

During the latter part of the 19th century a good many courts implied the negligence of the third person to the plaintiff in a number of situations, because of theories of a fictitious agency relationship, which are now generally recognized as pure fiction and no longer valid . . . .

A case in another jurisdiction which was factually similar to the present action, has held the doctrine of imputed negligence would not be given effect against a plaintiff whose attorney did not control the litigation. In *Anderson v. Southern Surety Company*, 107 Kan. 375, 191 P. 583 (1920), the court held that the negligence of a personal attorney would not be attributed to the client in order to bar that client's lawsuit against an insurance company for the negligent conducting of a defense pursuant to a policy of insurance. In *Anderson* the attorney appointed by the insured to defend the claim against the insured, was held to be negligent in failing to file a demurrer to the injured party's petition. The insurer attempted to argue that it was not liable since plaintiffs had employed able counsel of their own. The *Anderson* court was unimpressed with this reasoning since it found that the insurer controlled the litigation and should be held responsible. In this case, State Farm had exclusive control over the defense of the case. Since the insured has already been punished once for his attorneys' conduct, there is no reason to expand the application of a doctrine to a second action, which most courts apply cautiously to the first action. This court sees no reason why State Farm should be shielded from guilt by a fiction.

Contrary to defendant's position, the courts of this state have not gone beyond the specific exceptions for the doctrine and imputed the negligence of an attorney to a client so as to bar the client's prosecution of

18. Fanning deposition, pp. 20–24.

a claim. The case of *Hucks v. Green's Fuel of South Carolina*, 247 S.C. 457, 148 S.E.2d 149 (1966) stands for the proposition that Fanning was bound by State Farm's action when Fanning was a defendant, not later on when he sought to hold State Farm accountable for its acts. To read *Hucks* any more expansively would shield State Farm from responsibility for the failure to answer. Clearly this would be unjust where State Farm controlled the defense of the suit under the terms of the contract.

The next issue concerns State Farm's liability for failure to settle in excess of its policy limits. Defendant contends plaintiffs cannot recover on a theory that defendant wrongfully failed to settle the personal injury case because the evidence overwhelmingly shows that defendant was willing to settle with the Hodges and did attempt to negotiate a settlement.

Insofar as this court can determine, the issue presented here is one of first impression: whether an insurer has a duty to settle in excess of its policy limits where the insurer's failure to defend *may* make it liable for damages in excess of the policy limits. Clearly the insurer is liable for the losses occasioned by the insurer's negligent failure to settle within the policy limits. *Tiger River Pine Co. v. Maryland Casualty Co.*, 163 S.C. 229, 161 S.E. 491 (1931). Were this case one in which the insurer knew with certainty that its failure to answer had caused the entire $200,000 in damages, it would certainly be in the insurer's best interest to settle since it would be liable for the entire amount any way under the *Tiger River* doctrine. But what duty does an insurer have when its liability for damages in excess of the policy is uncertain, as it was in this case?

This court must bear in mind that it was the insurer's negligent act [19] which precipitated all of its own difficulties. Had an answer been filed and the full policy limits offered by State Farm, there would have been no liability for failure to settle. An element of uncertainty entered this case however, when it became apparent to State Farm that its insureds would have little or no chance of challenging liability. As will be discussed *infra*, State Farm takes the position that its failure to answer did not cause any damages because there was going to be full liability with or without an answer. Therefore, even with a default judgment which was the fault of the insurer, the insurer could claim that it was not responsible for the damages.

Under *Tiger River*, an insurer in this state is bound "to sacrifice its interests in favor of those of the [insured]." *Tiger River Pine Co. v. Maryland Cas. Co.*, 170 S.E. 346, 348 (1933). Even though the *Tiger River* line of cases involve offers within the policy limits, this court would apply the same standard where the insurer's negligence has, in effect, raised its policy limits to the extent necessary to compensate for all damages occasioned by its negligence. While the insurer may be uncertain as to its liability for the excess damages, insurers constantly deal in uncertainties, and are quite capable of ascertaining the probability of liability in a given case. The question of whether State Farm acted reasonably in not offering to settle in excess of its policy, is a question for the jury.

It is in precisely the situation where a prospective settlement will exceed the policy limits that the interests of the parties will be essentially hostile. "In such circumstances it becomes all the more apparent that the insurer must act with the utmost good faith toward the insured in disposing of claims against the latter." *Bell v. Commercial Insurance Co. of Newark, N. J.*, 280 F.2d 514, 516 (3rd Cir. 1960). The burden is on the plaintiffs to show by a preponderance of the evidence that State Farm negligently failed to favor the best interests of its insured by not offering to make a reasonable settlement.

The courts have specified some of the factors which a jury may consider in find-

---

**19.** At oral argument, counsel for defendant admitted that the insurer was negligent in its failure to file an answer.

ing negligence, and/or bad faith, on the part of the insurer in excess limits cases. While the factors considered in *Bell v. Commercial Insurance Co. of Newark, N. J.,* supra, and *Young v. American Casualty Company of Reading, Pa.,* 416 F.2d 906 (2d Cir.), *cert. dismissed* 396 U.S. 997, 90 S.Ct. 580, 24 L.Ed.2d 490 (1970), are not completely appropriate for this case, they do offer some guidance as to a proper analytical approach. In *Young,* the insurer failed to settle within policy limits or ask for a contribution from its insured, in spite of the likelihood that an excess verdict would be returned. The court isolated four factors which might indicate "bad faith" on the part of the insured: (1) failure to properly investigate the accident; (2) refusal to accept an offer within policy limits; (3) failure to inform the insured of a compromise offer; and (4) failure to attempt to induce a contribution from the insured. In *Bell,* the court found it significant that the insurer may have (1) failed to investigate the claim; (2) failed to pursue settlement negotiations after an offer was made by the opposing party; and (3) failed to conclude what the case might be worth for settlement purposes.

■ Given the unique facts of this litigation, some rewording of the above-listed factors is necessary. The jury should be allowed to consider, among other factors, the following:

(1) Whether the insurer calculated its potential liability for failure to defend;

(2) Whether the insurer investigated the potential recoverable damages;

(3) Whether the insurer concluded what a settlement value of the case would be after the default judgment;

(4) Whether the insurer initiated or pursued settlement negotiations after the default judgment;

(5) Whether the insurer sought to enlist a contribution from its insured commensurate with that portion of the settlement which the insured should contribute.

■ The final issue of substance raised by defendants is whether liability can exist for negligent failure to defend, absent the existence of a meritorious defense on the part of the insureds. Defendant has characterized this suit as a malpractice action against State Farm's attorney, which would require plaintiffs to prove that Fanning had a meritorious defense. Annot. 45 A.L.R.2d 9; *Garguilo v. Schunk,* 58 App.Div.2d 683, 395 N.Y.S.2d 751 (1977); *Pusey v. Reed,* 258 A.2d 460 (Del.Sup.1969); *Nause v. Goldman,* 321 So.2d 304 (Miss.1975); *Masters v. Dunstan,* 256 N.C. 520, 124 S.E.2d 574 (1962); *Freeman v. Rubin,* 318 So.2d 540 (Fla. 3rd D.C.A.); *Wooddy v. Mudd,* 258 Md. 234, 265 A.2d 458; *Hansen v. Wightman,* 14 Wash. App. 78, 538 P.2d 1238; *Frost v. Hanscome,* 198 Cal. 550, 246 P. 53 (1926). Failing this proof, there would be no proximate cause of damages since Fanning/Birobal would have been fully liable had an answer been filed. However, defendants characterization of this lawsuit in a malpractice claim is not persuasive nor is the narrowness of its view of the insurer's duty, the law.

The complaint reads in negligence arising out of the duty to defend and the failure to reasonably settle, and names a corporation, rather than an attorney, as the defendant. Furthermore, plaintiffs have alleged a failure to settle, a theory which focuses on the conduct of the insurance company rather than its attorney. Although damages for a failure to answer might normally be pursued by a claim of legal malpractice, the complaint implies that the insured was relying on a company attorney rather than a specific, personal attorney to defend him. This court is persuaded that plaintiffs are not bringing a legal malpractice action which requires a showing of meritorious defenses.

Defendant construes its duty to defend more narrowly than would this court. A policy of insurance guarantees not just a defense as to the merits but a comprehensive defense designed to minimize the exposure of an insured. Insurers do not fulfill this comprehensive obligation by defending only as to liability. The defense must be proffered even if the liability issue is clearly

to be resolved against the insured. An answer is the opportunity for a defense. By filing an answer and placing the issue of liability in question the insurer protects the insured's right to discovery, to negotiate settlement, and to ultimately try the case before a jury which would include the insured's being given the opportunity to call witnesses and to cross-examine witnesses. The insured pays a premium in return for the insurer's promise, embodied in its duty to defend, to provide the insured these rights.

■ Defendant equates its duty to defend with its duty to indemnify. Thus two duties are not coextensive, and the cases have so held. *Sloan Const. Co., Inc. v. Central Nat. Ins. Co. of Omaha*, 269 S.C. 183, 236 S.E.2d 818 (1977); *American Cas. Co. of Reading, Pa. v. Howard*, 187 F.2d 322 (4th Cir. 1951). An insurer's duty to defend extends beyond the policy's term for indemnity, arising both where the suit is frivolous and where it exceeds the policy limits. The duty to defend is unconditional.

Defendant's argument that the entire matter of the judgment is attributable to its insured's conduct and has no relation whatsoever to the entry of default eviscerates its duty to defend. All lawyers involved in litigation utilize the doubt surrounding the ultimate determination of liability in order to secure an optimum settlement.[20] State Farm's insured never had this opportunity due to the default. Furthermore, under South Carolina law, the default prevented Fanning/Birobal from introducing testimony to contradict Hodges' medical testimony as to injury and damages.

■ Obviously the measure of damages in this suit is speculative, in that no one knows what the suit would have been settled for had an answer been filed or a settlement attempted. State Farm, the wrongdoer, having placed its insured in this position, must bear the onus of its wrongdo-

ing. *Missionaries of Co. of Mary, Inc. v. Aetna*, 230 A.2d 21, 155 Conn. 104 (1967). "Where [a] wrongdoer creates [a] situation that makes proof of exact amount of damages difficult, . . . 'juries are allowed to act upon probable and inferential as well as direct and positive proof.'" *Powers v. Calvert Fire Ins. Co.*, 216 S.C. 309, 57 S.E.2d 638 (1950); See cases cited in 22 Am.Jur.2d, *Damages*, § 23. Plaintiffs' action should not be defeated for lack of damages, where, as here, defendant's conduct has caused the uncertainty.

Defendant claims that the Fourth Circuit's recent decision in *Juel v. The Glen Falls Insurance Co.*, No. 77-1248, (decided October 18, 1979) (currently under reconsideration) vindicates its conduct in this case. In *Juel*, the trial judge held that the insurer, in a "duty to defend" action, had not engaged in conduct which would make it independently liable for failure to defend. On appeal the Fourth Circuit reversed, noting that the insurer could have: (1) moved for an extension of time in which to answer before the default had been entered; (2) resisted entry of the default judgment; (3) moved to set the default aside; (4) contested the amount of damages; and (5) appealed the default judgment. Thus, although its local agency failed to inform the insurer of the action prior to the default, the insurer should have moved to defeat the default.

State Farm correctly states that it engaged in the actions suggested in *Juel*, but *Juel* does not absolve State Farm of liability on these facts. First, State Farm's actions were responsible for the default, unlike the insurer in *Juel*. Thus the chain of events which State Farm set in motion could not be mitigated by taking those actions cited in *Juel*, for *Juel* speaks only to the duty of an insurer to make the best of a situation made unfortunate by another's acts. Merely closing the barn door does not relieve one from liability for loss of the

20. From the adjuster evaluation produced from the files of State Farm in the earlier litigation, it is known that the State Farm Insurance Company before default estimated the case at a minimum of $12,000 to $15,000. While this is only a minimum figure, it does suggest that a compromise figure short of $200,000 might have been negotiated.

horse, where the "door closer" allowed the horse to escape.

In fact, *Juel* supports plaintiffs' causes of action by stating that the defense rendered by an insurer must be reasonable and in good faith, not necessarily "meritorious." This court sees nothing in *Juel* which would prevent recovery by plaintiffs in this action, since under *Juel*, failure to try to "retrieve the situation" will result in liability.

In support of its cause of action, plaintiff has submitted the affidavit of an expert witness that defendant's failure to defend was the proximate cause of plaintiffs' damages. This evidence in combination with the other facts appearing in the materials presented for purposes of this motion, requires this court to deny defendant's motion for summary judgment.

This court leaves the determination of the punitive damages issue to the trial court which will be better equipped to handle the matter after plaintiffs have presented their case. On the matter of attorneys' fees, plaintiffs contend that the consequential damages flowing from the negligence and/or breach of contract of defendant should include the attorneys' fees paid in this action.

In *Andrews v. Central Surety Insurance Company*, 271 F.Supp. 814, *aff'd* 391 F.2d 935 (4th Cir. 1967), Judge Simons ruled that attorneys' fees are not recoverable at common law in this type of action. This holding is also consistent with *Addy v. Bolton*, 257 S.C. 28, 183 S.E.2d 708 (1971), which would allow recovery of attorneys' fees expended in defense of a suit where the defendant is a passive tortfeasor forced to defend because of the active negligence of another. That case impliedly reaffirmed the general rule that plaintiffs are not entitled to recover attorneys' fees for suits which they prosecute. *Townsend v. Singleton*, 257 S.C. 1, 183 S.E.2d 893 (1971). Because plaintiffs have not alleged any basis on which attorneys' fees can be awarded, plaintiffs' prayer for same is denied. *Andrews, supra* at 821.

The summary judgment motions are denied.

AND IT IS SO ORDERED.