## 20504

Jerry HUTSON, Respondent, v. CONTINENTAL ASSURANCE
COMPANY and Harco Insurance Services, Inc., Appellants.

(237 S. E. (2d) 375)

*H. Edward Smith, G. L. Inabinet and Thomas M. Boulware, of Brown, Jefferies & Boulware,* of Barnwell, *for Appellants,*

*Terry E. Richardson, Jr., and Ronald L. Motley, of Blatt,
Fales, Bedingfield, Loadholt, Poole, Motley & Richardson,
Barnwell, for Respondent,*

September 1, 1977.

LITTLEJOHN, Justice:

This appeal encompasses five separate suits brought by respondent Jerry Hutson against the appellants, Continental Assurance Company (Continental) and Harco Insurance Services, Inc. (Harco), seeking damages for breach of several contracts of credit disability insurance allegedly issued by and through the appellants · to Hutson. The five actions have identical captions, present the same issues, and encompass essentially the same cause of action with each cause relating to a particular installment contract executed by Hutson.

The pertinent facts are that at some time before this controversy arose, Continental issued a master policy of group credit disability insurance to International Harvester Credit Corporation (I. H. Credit). This master policy provided for payment to I. H. Credit, as the insured, of certain amounts in the event that an individual who financed an equipment purchase with I. H. Credit and availed himself of disability insurance through the master policy, became totally disabled and unable to make any further payments.

Harco (an insurance agency) is a subsidiary of the International Harvester Corporation and, by virtue of an agreement with Continental, administered the writing of individual credit disabilty insurance pursuant to the master policy.

Over a period of approximately one month, beginning May 27, 1974, Hutson purchased certain vehicles and items of equipment from Campbell Equipment Company (Campbell Equipment) in Augusta, Georgia. Five separate installment contracts were executed in connection with these purchases, all of which were financed by First National Bank and Trust Company of Augusta (First National). At the same time that the equipment was purchased and installment contracts executed, Hutson entered into contracts of

disability insurance with Continental through the salesmen and/or agents of Campbell Equipment. He later received certificates of insurance through the mail.

On October 14, 1974, Hutson received an accidental injury rendering him unable to substantially perform his usual occupation of managing and operating a produce trucking business in which the purchased equipment was used. Within several weeks, Hutson advised Campbell Equipment of his injury. He subsequently received in the mail a message from Campbell instructing him to void all insurance certificates issued to him, with the exception of three certificates which were enclosed with the message. In essence, this correspondence amounted to a denial by Campbell Equipment that Hutson possessed valid, collectible credit disability insurance.

In January, 1975, Hutson submitted his claims to Harco for the payment of disability insurance; Harco refused to honor the claims. In April, 1975 after having received no further payment on the installment contracts since the time of Hutson's accident, First National instituted an action against Hutson in the United States District Court for the Southern District of Georgia, for the recovery of the equipment purchased by Hutson from Campbell and financed by First National. That action resulted in Hutson's surrendering possession of the equipment to First National in June, 1975.

The present actions were commenced thereafter, in January, 1976. They might have been included in one complaint. A motion by the appellants to consolidate the five actions was denied by the trial court. Rather, the court ordered the parties to try them as separate cases tried together. In actuality, the trial for all intents and purposes was conducted as if the motion to consolidate had been granted. The jury subsequently rendered five separate verdicts in favor of Hutson in amounts totaling $40,000 actual damages. Pursuant to § 37-167.1, Code of Laws of South Carolina (1962), the trial court found that Continental had failed to pay without

reasonable cause and in bad faith, and granted attorneys' fees to Hutson in each case, for a total of $10,437.00.

The appellants first take exception to the trial court's refusal to grant their motions for nonsuit, directed verdict, or judgment notwithstanding the verdict, in that Hutson failed to prove the existence of any contract or policy of insurance, oral or written, which provided any benefits. The major point of their argument on this issue is that Hutson could not, under any circumstances, have qualified for credit disability insurance under the master policy issued to I. H. Credit. Hutson had financed his purchases with First National, rather than I. H. Credit, and thus was not indebted to I. H. Credit, the "insured" under the master policy. This is an accurate statement of the facts and the appellants are, of course, technically correct in their argument. A review of the entire record, however, reveals additional facts which compel us to reach a conclusion different from that urged by appellants. It is clear from the record that both Buck Jones, a Campbell Equipment salesman, and Tom Campbell, president of Campbell Equipment, represented themselves to Hutson as being authorized to write credit disability insurance on equipment purchases. Campbell Equipment had in its possession Continental's certificates of insurance, collected the premium from Hutson, and later even mailed insurance certificates to him. Further, it must be noted that Hutson himself testified that he noticed the discrepancy with the insurance in that he was not indebted to I. H. Credit, but was simply told that it presented "no problem" and that everything would be straightened out.

In our opinion, the preceding facts amply support a finding of the existence of apparent authority extending from Continental through Harco to the agents and/or employees of Campbell Equipment, and thus a contract of credit disability insurance existed between Continental and Hutson. As listed in 3 Am. Jur. (2d), *Agency*, § 75, the basic pre-

requisites for Continental and Harco establishing such an agency relationship with Campbell Equipment are present here in that (1) the principal (Continental) manifested consent to the exercise of such authority, or knowingly permitted the agent to assume the exercise of such authority, (2) the third person (Hutson) knew of the facts and, acting in good faith, had reason to believe, and did actually believe that the agent possessed such authority, and (3) the third person, relying on such appearance of authority, changed his position and would be injured or suffer loss if the act done or transaction executed by the agent did not bind the principal.

Appellants' contention that there was no evidence to go to the jury on the issue of total disability is without merit. The evidence clearly made a jury issue on this point, which was decided favorably to Hutson.

Having concluded that the defendants were not entitled to prevail as a matter of law on the issue of liability, and having concluded that the issues were properly submitted to the jury, we proceed to a consideration of the other alleged trial errors.

Appellants argue that the trial judge erred in instructing the jury on the matter of damages recoverable by Hutson for breach of the insurance contract. All allegations of fraud and allegations requesting punitive damages were stricken by the trial judge, and the case was submitted to the jury as one for breach of contract only. Appellants' position is that Hutson's measure of damages is limited to the contractually-stated amount of coverage indicated on the face of the policies, together with accrued interest, and that Hutson is not entitled to recover consequential damages.

The complaints allege damages as follows:

"a. The loss of the insurance benefits payable monthly pursuant to the contract.

b. The loss of use of the equipment since June, 1975 [the date of actual respossession]. . . . ."

Contrary to appellants' position, the trial judge charged the jury that the appellants, as insurers, would be,

"liable for any actual damages which naturally flow from such alleged breach of contract, or alleged failure to make payment, . . ."

He further charged the jury that:

". . . ([I]f you find by the greater weight or preponderance of the evidence that the defendants breached the contract by refusal to pay, and the breach was accompanied by aggravation, such may be considered by you as a part of the costs or damages accompanying the breach."

At the time of the charge, the jury had been allowed to hear evidence on and consider awarding (over and above the face amount of the insurance contracts) damages allegedly resulting from such breach, including those for the repossessed equipment, loss of income, loss of investment tax credit, and attorneys' fees incurred by Hutson while defending First National's repossession action in the Federal District Court in Georgia. The defendants submitted a request to charge ". . . that you cannot find incidental or consequential damages in favor of the plaintiff." The request was refused. After the judge had completed his charge, Mr. Boulware of counsel for the defendants, interposed objection as follows:

"Mr. Boulware: Number One. May it please the Court, we would take exception to the Court's charge as to damages, which I think we have previously—

The Court: Mr. Boulware, you take the position that the only damages that can flow out of it are the amounts as set forth in any contract which the jury may find to have existed and that no consequential damages could flow? Is that your position, sir?

Mr. Boulware: That is my position, sir.

The Court: I overrule your position, and I note your exception, but I will not change my charge in regard to that.

You may well be right, however, I do not think you're right. I leave the matter for the Supreme Court."

We agree with the appellants that the quoted charges ■ by the court were incorrect. On the matter of damages, the judge charged the law normally applicable in tort cases. The rule in contract actions is to be distinguished from the rule in tort actions. In tort actions, damages may be recovered for all injuries which proximately follow, whether or not such injuries could have been anticipated or contemplated. In breach of contract actions, only such damages as may reasonably be supposed to have been in the contemplation of both parties at the time the contract was made may be collected.

Here we have insurance contracts issued for a specific purpose, which purpose was well known to both the insurer and the insured. The purpose was to assure installment payments such that the purchased equipment not be repossessed by the lien holder. The policies themselves state:

"All sums paid to the creditor hereunder shall be applied by the creditor to reduce or extinguish the then indebtedness of the debtor to the creditor."

Normally, one who breaches a contract to pay money ■ is liable for only the amount of money specified in the contract itself, but this rule does not always apply. As stated in 22 Am. Jur. *Damages,* § 64,

". . . [W]here the money was to be paid for a special purpose which was known to the party agreeing to make the payment, damages directly and naturally resulting from the breach and therefore supposed to have been in contemplation of the parties may be given in addition to interest. . . ."

From our case of *Kline Iron & Steel Co. v. Superior Trucking Co., Inc.,* 261 S. C. 542, 201 S. E. (2d) 388 (1973), we quote the following:

"The damages recoverable for a breach of contract are those which follow as a natural consequence of the breach, or

which may reasonably be supposed to have been within the contemplation of the parties at the time the contract was entered into. 22 Am. Jur. (2d) Damages, Section 56; *Hiers v. South Carolina Power Co.,* 198 S. C. 280, 17 S. E. (2d) 698.

"General damages, that is, those which naturally, logically, and necessarily result from the breach of contract or injury, do not have to be specially pleaded; but may be proved under a general allegation of damages. Special damages, however, must be particularly alleged and proved. The principle is thus stated in *Hobbs v. Carolina Coca-Cola Bottling Co.,* 194 S. C. 543, 10 S. E. (2d) 25: 'But where damages do not necessarily result from the act complained of, and consequently are not implied by law, the plaintiff must state the particular damage sustained in order to introduce testimony in regard to it. The rule is to avoid surprise.' "

We are of the opinion that the broad rule stated by the trial judge in his charge was not warranted by the pleadings or the evidence.

"The requirement that contract damages be in the contemplation of the parties, or be foreseeable, at the time the contract is entered into, is a rule of law; . . . ." 22 Am. Jur. (2d), *Damages* § 57.

The trial judge permitted evidence relating to special damages not pleaded. Even if evidence of such was properly before the court, the charge was erroneous and denied the defendants a fair trial insofar as the assessment of damages is concerned.

We now reach the question of what is the proper disposition of the case. We find no error other than the charge of the law by the judge, and that relates solely to the assessment of damages. Implicit in the jury verdict is a finding that the defendants are liable for the amounts indicated on the face of the policies. If Hutson is content to accept the "policy amounts" as calculated by the trial court, no new

trial need be held. On the other hand, if he wishes to pursue consequential damages supposed to have been within the contemplation of both parties when the contract was made, a new trial is in order. The new trial shall be as to all issues. *See South Carolina Elec. & Gas Co. v. Aetna Ins. Co.,* 233 S. C. 557, 106 S. E. (2d) 276 (1958).

A new trial is ordered and shall be held unless Hutson, within ten (10) days from the filing of the remittitur, files with the Clerk of Court for Barnwell County a consent in writing to accept the total of the amounts indicated in the policies, plus interest. In such case, the Court of Common Pleas of Barnwell County shall calculate the appropriate amount and enter judgment accordingly. If Hutson does not agree to accept such amounts, a new trial shall be held.

Lastly, appellants allege error on the part of the trial judge in refusing to consolidate the five cases and in ordering the parties to try them as separate cases tried together, and in granting Hutson's atorneys five separate attorneys' fees pursuant to § 37-167.1 of the 1962 Code. That section provides for assessment of attorneys' fees against an insurer if the court finds that the insurer's refusal to pay a claim was "without reasonable cause or in bad faith." The five claims were such that they might have been included in one complaint as five separate causes of action. In actuality, the trial was conducted as if consolidated. The five cases were virtually identical, involving substantially the same issues and differing only in the sums allegedly due under each cause of action; consolidation should have been available as a matter of right to the appellants. *Ford v. New York Life Ins. Co.,* 180 S. C. 390, 185 S. E. 914 (1935). The judge erred in failing to grant the motion to consolidate.

The remainder of this opinion relates to the payment of attorneys' fees. If a new trial is held, our ruling herein will be inapplicable because the attorneys' fee issue will be determined by the presiding judge at the retrial.

If, however, Hutson elects to enter judgment as indicated hereinabove, our ruling will control the attorneys' fee issue. After a full review of the record, we cannot say that the judge erred in finding that the appellants did in fact unreasonably refuse to pay Hutson's claims. The assessment of fees in this case was not inappropriate.

Section 37-167.1 provides that the attorneys' fees shall not "exceed one-third of the amount of the judgment or the sum of twenty-five hundred dollars, whichever is less." If Hutson agrees to enter judgment for the face amount of the policies, plus interest, the amount of attorneys' fees to be paid shall be not more than one-third of the total amount of the judgment growing out of the five policies, or $2,500.00, whichever is less. Any judge having jurisdiction of the Court of Common Pleas in Barnwell County will have jurisdiction to calculate the amount of damages collectible under the policies, but only the judge, Eltzroth, who tried the case shall (according to the statute) have authority to assess the amount of attorneys' fees which shall be added to the judgment.

Remanded.

Affirmed In Part;

Reversed In Part.

LEWIS, C. J. RHODES and GREGORY, JJ., and JOSEPH R. Moss, Acting Associate Justice, concur.