562 S.E.2d 659

**MIXSON, INC. d/b/a The General Store, Appellant,**

v.

**AMERICAN LOYALTY INSURANCE COMPANY, Old Dominion Insurance Company and Insurance Service of Beaufort, Inc., Defendant,**

**Of Whom American Loyalty Insurance Company, Old Dominion Insurance Company, are Respondents.**

**No. 3450.**

Court of Appeals of South Carolina.

Heard Sept. 4, 2001.
Decided Feb. 25, 2002.
Rehearing Denied May 15, 2002.

Paul W. Owen, Jr., of Paul W. Owen, Jr., LLC, of Columbia, for appellant.

J.R. Murphy, of Columbia, for respondents.

HOWARD, J.

Mixson, Inc. ("Mixson") filed this suit against American Loyalty Company and Old Dominion Insurance Company (collectively "American")[1] for breach of a commercial insurance contract, bad faith refusal to pay an insurance claim, and statutory attorneys' fees. The circuit court granted partial summary judgment to Mixson on its breach of contract claim, but granted summary judgment to American on the remaining claims, concluding there was no evidence of bad faith. Mixson appeals from the partial summary judgment awarded to American. We reverse and remand.

## FACTS

Mixson operates convenience stores in South Carolina. On November 11, 1996, one of its stores was burglarized, and $1,940.00 in cash was stolen from a MiniATM Model 9500 Automatic Teller Machine ("the ATM") located inside the store. Mixson filed a claim, which included the stolen cash, under its policy with American. American paid Mixson's claim except for the cash, which American denied because the policy did not provide coverage for stolen valuables not located inside a "properly locked safe or vault."[2] American concluded the ATM was not a safe. Asserting the ATM was a safe, Mixson filed this suit for breach of contract, bad faith refusal to pay an insurance claim, and attorneys' fees.

---

1. Old Dominion was added as a party because American merged with Greentree Financial Holdings, whose claims are handled by Old Dominion.

2. The commercial insurance policy contained the following coverage:
 A. **COVERAGE**—We will pay for loss of . . .
 1. **Section 1.—Inside The Premises** . . .
 b. **Safe Burglary**
 (1) **Covered Property:** "Money" and "securities" in a safe or vault within the "premises" or "banking premises".

Both parties ultimately filed motions for summary judgment, with supporting affidavits and deposition testimony. Mixson asserted the ATM is a locked metal container in which valuables are stored, which fits the common definition of a safe. Mixson supported its assertion with the affidavit of a locksmith. The policy did not contain any definition for the word safe, and Mixson argued the common definition was, therefore, controlling. Mixson also asserted a question of fact was presented as to bad faith and unreasonable conduct by American in the handling and denial of the claim, precluding summary judgment on the bad faith and attorneys' fee claims. Mixson supported this assertion with the adjuster's claim file notes and the affidavit of an insurance expert.

Respondents filed portions of its adjusters' deposition testimony, who testified that the claim was denied because their research revealed no precedent for classifying an ATM as a safe and a breakdown of the "functionality" of an ATM led them to conclude it was in the nature of a cash register. They noted the ATM was directly accessible to customers and its function was to dispense cash. In addition, Respondents presented an affidavit from a supervising technician employed by the manufacturer, noting that the ATM does not have an industry certification for twenty-four hour security, but is certified only to "business hours" security standards.

The circuit court awarded summary judgment to Mixson on the breach of contract claim, concluding the ATM constituted a safe under the common definition of the word and, because the policy contained no further definition of a safe or criteria for differentiating the ATM from a safe, Mixson was entitled to payment of the claim. Although American does not wish to concede that an ATM is a "safe," that issue is not before us because American did not appeal this ruling. Therefore, it is the law of this case. *See ML–Lee Acquisition Fund v. Deloitte & Touche,* 327 S.C. 238, 489 S.E.2d 470 (1997).

The trial court then concluded the question of whether the ATM fit within the definition of a safe was a legitimate issue of novel impression which the insurance company was entitled to litigate and, therefore, the Respondents were entitled to summary judgment on the bad faith claim and the claim for attorneys' fees. Mixson appeals from this ruling.

## DISCUSSION

### I. Summary Judgment

Summary judgment is appropriate when it is clear there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP. In determining whether any issue of fact exists to preclude summary judgment, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Strother v. Lexington County Recreation Comm'n,* 332 S.C. 54, 61, 504 S.E.2d 117, 121 (1998).

### A. Bad Faith Refusal to Pay

▪ Mixson argues the trial court erred in granting summary judgment to Respondents on the claim for bad faith refusal to pay and its alternative claim for attorneys' fees pursuant to South Carolina Code Annotated section 38–59–40 (Supp.2001), contending more than one inference can be drawn from the evidence. We agree.

> Bad faith refusal to pay ... benefits under a contract of insurance includes: (1) the existence of a mutually binding contract of insurance between the plaintiff and defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured.

*Howard v. State Farm Mut. Auto. Ins. Co.,* 316 S.C. 445, 451, 450 S.E.2d 582, 586 (1994). In the present case, the only element in dispute is whether Respondents acted unreasonably or in bad faith.

 Generally, if there is a reasonable ground for contesting a claim, there is no bad faith in the denial of it. *See Cock–N–Bull Steak House, Inc. v. Generali Ins. Co.,* 321 S.C. 1, 7, 466 S.E.2d 727, 730 (1996); *Crossley v. State Farm Mut. Auto. Ins. Co.,* 307 S.C. 354, 359–60, 415 S.E.2d 393, 396–97 (1992). In this regard, our supreme court has ruled that an insurance company should be able to litigate novel issues without fear of being accused of acting in bad faith. *See Nelson v. United Fire Ins. Co.,* 275 S.C. 92, 267 S.E.2d 604 (1980); *Myers v.*

*Gov't Employees Ins. Co.,* 279 S.C. 70, 302 S.E.2d 331 (1983); *see also Smothers v. U.S. Fid. & Guar. Co.,* 322 S.C. 207, 470 S.E.2d 858 (Ct.App.1996). American argues this is such a case because there is no clear-cut precedent establishing that the ATM is a safe. American contends the trial court was correct in ruling that the issue is a novel one, rendering the denial of the claim reasonable as a matter of law.

We disagree with this conclusion under the posture of this case. The trial court ruled that the ATM undisputedly fits within the common definition of a safe. There being no additional criteria superimposed upon this common definition by the policy terms, he ruled no factual issue was presented and Mixson was entitled to summary judgment on his breach of contract cause of action. These rulings by the trial court are not appealed, and they are the law of this case. *See ML–Lee Acquisition Fund,* 327 S.C. at 238, 489 S.E.2d at 470.[3] Under these circumstances, we conclude a factual issue is presented as to whether or not American acted reasonably in denying the claim.

Once the trial judge concluded the ATM fit within the common definition of a safe, the legal precedent he relied upon to arrive at his ultimate conclusion that it was covered under the terms of the policy is well established in this State and is far from novel.

> It is a well settled rule that the terms of an insurance policy must be construed most liberally in favor of the insured and where the words of a policy are ambiguous, or where they are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured. However, in cases where there is no ambiguity, contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood in their plain, ordinary and popular sense. If the intention of the parties is clear, the Courts have no authority to change the contract in any particular. The Court has no power to interpolate into the agreement between the insurer and the insured a condition or stipula-

---

**3.** This court renders no opinion as to whether the ATM is or is not a safe, either under a commonly accepted definition of the word, or under the wording of the policy in question.

tion not contemplated either by the law or by the contract between the parties.

*Rhame v. National Grange Mut. Ins. Co.*, 238 S.C. 539, 544, 121 S.E.2d 94, 96 (1961) (citations omitted).

■ An insurer is not insulated from liability for bad faith merely because there is no clear precedent resolving a coverage issue raised under the particular facts of the case. In *Tadlock Painting Co. v. Maryland Casualty Co.*, 322 S.C. 498, 473 S.E.2d 52 (1996), our supreme court underscored its holding from previous cases that the covenant of good faith and fair dealing extends not just to the payment of a legitimate claim, but also to the manner in which it is processed. The court recognized that "the benefits due an insured are not limited solely by those expressly set out in the contract." *Id.* at 503, 473 S.E.2d at 55. Our supreme court has consistently made this point. *See Howard*, 316 S.C. at 451, 450 S.E.2d at 586 (holding jury could have found the insurer was unreasonable in failing to pay claims it received after the original injury, viewing the evidence and its inferences in light most favorable to insured, notwithstanding insurer relied upon lack of definitive prior case law and its own attorney's advice to deny a claim for medical expenses); *Varnadore v. Nationwide Mut. Ins.*, 289 S.C. 155, 345 S.E.2d 711 (1986) (finding insurer not entitled to directed verdict on claim of bad faith refusal to pay when it claimed its own investigation provided reasonable basis to deny claim).

In light of the trial court's unappealed rulings, and viewing the evidence in a light most favorable to Mixson, we conclude a factual issue is presented as to whether American's refusal to pay the claim was unreasonable.

### B. Statutory Attorneys' Fees

Mixson next argues the trial court erred in granting summary judgment on the issue of statutory attorneys' fees because the facts warranted further development to determine whether American acted in bad faith or without reasonable cause in denying Mixson's claim. For the reasons articulated in connection with Part A of this opinion, we agree.

An insurer is liable to the policy holder for all reasonable attorneys' fees for the prosecution of the case against the

insurer if the trial judge finds the refusal to pay the policy-holder's claim was without reasonable cause or in bad faith. S.C.Code Ann. § 38–59–40 (Supp.2001). As stated above, the circuit court improperly concluded there was no evidence to support a conclusion that Respondents' refusal to pay Mixson's claim was unreasonable or in bad faith. Therefore, we reverse this issue and remand it for further proceedings.

## II. Discovery

■ Mixson next argues the trial court erred in granting summary judgment on the same day that it granted Mixson's motion to compel production of documents, without affording time for the production and review of the requested documents.

The record does not reveal that Mixson objected to the court's consideration of the motion for summary judgment or that the court denied a motion for continuance pending further discovery. Therefore, this issue is not preserved for our review. *See Degenhart v. Knights of Columbus,* 309 S.C. 114, 420 S.E.2d 495 (1992) (stating whether court erred in granting summary judgment while appellants had motion to compel outstanding was not preserved when appellants failed to move for a continuance and did not request motion for summary judgment be held in abeyance until after ruling on discovery motion); *Pryor v. Northwest Apartments, Ltd.,* 321 S.C. 524, 469 S.E.2d 630 (Ct.App.1996) (holding whether judge erred in granting summary judgment because discovery requests were outstanding was not preserved when appellant did not ask for a continuance to complete discovery).

## CONCLUSION

Based on the foregoing reasons, the decision of the trial court is

**REVERSED AND REMANDED.**

HEARN, C.J., and CURETON, J., concur.