Kathryn E. SHIFTLET, Plaintiff,

v.

**ALLSTATE INSURANCE CO., Defendant.**

C.A. No.: 2:04–22851–23.

United States District Court,
D. South Carolina,
Charleston Division.

Aug. 10, 2006.

Edward K. Pritchard, III, Pritchard Law Firm, Philip Alston Middleton, Charleston, SC, for Plaintiff.

Thomas H. Milligan, Milligan Law Firm, Mt. Pleasant, SC, for Defendant.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

Following Allstate Insurance Company's ("Allstate") denial of Plaintiff Kathryn Shiftlet's ("Plaintiff") claim on her Deluxe Mobile Home Policy, Plaintiff brought this action alleging breach of contract, bad faith, intentional infliction of emotional distress/outrage, and violation of South Carolina Code Section 59–38–40 (1976). Defendant Allstate has asserted a counterclaim for a declaratory judgment that it has no obligation to Plaintiff under the subject insurance Policy.

This matter is currently before the court on Defendant Allstate's Motions for Partial Summary Judgment regarding Plaintiff's claims for (1) bad faith, (2) intentional infliction of emotional distress, and (3) damages. Shiftlet has filed a Response to Allstate's Motion. Also before the court is Plaintiff Kathryn Shiftlet's lengthy Motion for Summary Judgment regarding (1) her breach of contract claim and (2) Allstate's declaratory judgment counterclaim.[1] Allstate has not responded to Plaintiff's Motion.

## BACKGROUND

On January 4, 2004, Plaintiff Kathryn Shiflet's mobile home and personal belong-

---

1. The court encourages Plaintiff's counsel to peruse the United States District Court Civil Rules for the District of South Carolina. Counsel will find of particular interest Local Rule 7.05 which specifies that "[u]nless an exception is granted by the Court, no memorandum shall exceed: (1) 35 double-spaced pages, in the case of an initial brief of any party; and (2) 15 double-spaced pages, in the case of any reply." D.S.C. Civ. R. 7.05. Plaintiff's Memorandum in support of her Motion for Summary Judgment and Memorandum in Response to Allstate's Motion both far exceed this page-limit, being seventy-two pages and sixty-nine pages, respectively.

ings were destroyed by fire. The fire originated on the stove, the burner of which had been turned to the highest setting underneath a pan of cooking oil. The heat of the oil ignited and caused the fire, resulting in damage to the home. The fire started at or around 11:30 p.m., while Kathryn Shiftlet, her husband, and eight year-old daughter were at Wal–Mart buying pantyhose for Mrs. Shiftlet. The Shiftlet family returned around 1:00 a.m. to find their mobile home in flames.

At the time of the fire, Plaintiff's mobile home was covered under a Deluxe Mobile Home Policy of insurance (the "Policy") provided by Allstate Insurance. Plaintiff reported the fire to Allstate the next day, January 5, 2004. Allstate immediately advanced the Shiftlets two thousand dollars for the lost contents of their home and placed them in a hotel.

The parties contest what happened at this point. Allstate claims that it sent two adjusters in good faith to examine and determine the extent of the loss. One adjuster, Benjamin Faircloth, testified that while he was at the Shiftlet home, Mr. Shiftlet offered a bribe to him personally. After the bribe was allegedly made, Mr. Faircloth decided that a more thorough investigation of the Shiftlet claim was needed. Plaintiff denies that a bribe was ever made, and claims that Mr. Faircloth misunderstood the conversation. Plaintiff also claims that Allstate never intended to pay under the Policy, and that Allstate sent the adjusters in bad faith to search for a pretext for denying the claim.

It is undisputed that shortly after visiting the Shiftlets' home, Faircloth reviewed the Shiftlets' claims history and found that they had made three other claims within the previous two years. Allstate asserts that all of the claims were "questionable."

The three previous claims are summarized briefly as follows:

(1) On December 30, 2002, the Shiftlets reported roof damage to the mobile home. They claimed that the roof damage was caused by high winds two weeks earlier. Allstate paid the Shiftlets for the alleged damage.

(2) On July 8, 2003, Mrs. Shiftlet reported another case of wind damage to the mobile home. After inspecting the claim, Allstate determined that the alleged damage was caused by defective design and improper maintenance, not by storms or winds. As such, because the damage was not caused by a covered occurrence, Allstate denied the claim. According to the Adjuster's Claims Diary dated August 23, 2003, Mr. Shiftlet told the adjuster when he denied the claim that Mr. Shiftlet would have "a sudden and accidental claim soon because he would make sure it appeared to be sudden." [2]

(3) On December 3, 2003, one month prior to the fire, the Shiftlets reported that they had been burglarized. They claimed that a window had been broken and that numerous expensive items were stolen, including jewelry and electronics. Allstate paid the claim.

After being offered what he considered to be a bribe and after reviewing the allegedly "questionable" claims history, Mr. Faircloth requested a Cause and Origin investigation into the fire damage claim.

On January 22, 2004, Mr. Faircloth received a verbal report from Bill Johnson, the investigator, that his investigation led him to believe that it was not a simple cooking fire. Mr. Johnson's Cause and Origin Report, dated March 3, 2004, ex-

---

**2.** Plaintiff denies Mr. Shiftlet made such a statement.

plained that the fire started because someone had either intentionally or accidentally turned a burner on high underneath a pan of cooking oil, and left it. "Before ignition, the pan's contents will typically smoke and produce a strong odor. The time line and circumstances of the fire were inconsistent with a cooking fire." After receiving the report that the fire was not consistent with the cooking fire as alleged by the Shiftlets, Mr. Faircloth turned the matter over to the Special Investigations Unit ("SIU") of Allstate.

The SIU adjuster, Mr. Eddie Ganaway, began investigating this matter as a case of potential arson. Mr. Ganaway testified that he found several "red flags," or suspicious facts, surrounding the occurrence of this fire. For example, Mrs. Shiftlet reported losing a large amount of cash in the fire, Mr. Shiftlet had discussed the potential insurance recovery with his neighbor Wesley Gunterman prior to the fire, the mobile home was in poor condition, and neither the family nor the family's eight dogs were in the home when the fire started at 11:30 p.m. Mr. Ganaway testified that these factors are generally considered to be warnings of potential insurance fraud.

On February 6, 2004, Mr. Ganaway met with the Shiftlets and asked that they sign an Authorization and a Non–Waiver Agreement. The Authorization would allow Allstate to access the Shiftlets' financial records which Allstate routinely checks in the course of an investigation. Authorization is necessary, as such records are otherwise protected. The Non–Waiver Agreement is a document alerting the insured that Allstate is investigating the claim. Under the Non–Waiver Agreement, both sides protect and reserve their rights under the policy. A Non–Waiver Agreement protects both parties' rights, as opposed to a Reservation of Rights letter, which protects only the insurance compa-

ny. At this point, Allstate decided that a Non–Waiver Agreement was more appropriate.

The Shiftlets, wanting to speak with their attorney before signing any documents, refused to sign the documents at that time. On February 19, 2004, the Shiftlets signed and returned the Authorization and Non–Waiver Agreement to Mr. Ganaway; however, they had redacted significant portions of the language of these documents. The Shiftlets felt that Allstate did not need all the documents set forth in the Authorization; therefore, they denied Allstate permission to access those documents they felt to be unnecessary to the investigation. The Shiftlets claim that their attorney John Crumrine advised them that such redactions were appropriate. Mr. Ganaway, on the other hand, testified that access to these documents was necessary for the investigation and that the redactions made the Authorization almost useless.

In response to the Shiftlets' refusal to sign the unredacted Authorization, Mr. Ganaway sent a Reservation of Rights letter to them on March 11, 2004 by certified mail. This letter explained that the redacted Authorization was unacceptable and warned the Shiftlets that they had an obligation to cooperate with the investigation and that their failure or refusal to do so could result in the denial of their claim. The Shiftlets received and signed for this letter.

Allstate then requested that the Shiftlets provide their Examination Under Oath ("EUO") as required by the Policy. Joe Weston, the attorney for Allstate, testified that his office scheduled the EUO to be at his office at 3:00 p.m. on Friday, April 2, 2004, so as to be convenient for the Shiftlets. He claims that during Mrs. Shiftlet's EUO, he questioned her regarding her finances and she was vague and evasive in

responding. He testified that, while he still had thirty minutes worth of questions for Mrs. Shiftlet, Mr. Shiftlet stopped the examination of his wife and had her walk out. Mr. Weston asserts that the Shiftlets gave no reason for their abrupt departure. Mr. Shiftlet did not sit for his EUO at all, and Mr. Weston testified that Mr. Shiftlet "cussed at him" as he left and said that he was not giving any statement.

The Shiftlets' have a very different version of the events at Mr. Weston's office. Plaintiff asserts that, prior to the EUO, she told Mr. Weston's office that it would be necessary for her and Mr. Shiftlet to leave his office in time to pick up their daughter Chrissy from school by 6:00 p.m. She claims that a member of Mr. Weston's staff told her that the EUO should last twenty to thirty minutes, so there would be no difficulty in leaving in time to pick up their daughter. She asserts that she and her husband were both ready and willing to give their EUOs. She claims that Mr. Weston kept them waiting until 3:24 p.m., and that her EUO went on for over an hour and a half. At or around 5:00 p.m., Mr. Weston took a break to speak with Mr. Ganaway. While they were on a break, Mr. Shiftlet told Mr. Weston that they needed to leave, got Mrs. Shiftlet, and the two of them left.

It is undisputed that on April 8, 2004, Mr. Ganaway drafted a letter to Mrs. Shiftlet, stating,

As you know, your policy with Allstate requires you to attend Examinations Under Oath (EUO's) as part of Allstate's investigation into your claim. Your EUO's were scheduled for April 4, 2004, and Mrs. Shiftlet's EUO commenced on that date. However, before the EUO was completed Mrs. Shiftlet refused to answer any further questions and left the building. Mr. Shiftlet refused to submit to his EUO at all and

refused to place any objection to the same on the record.

Allstate hereby requests that you both appear at the Weston Law Firm within the next 10 days to complete Mrs. Shiftlet's EUO and to have Mr. Shiftlet's EUO taken. If you refuse this request, that refusal may be grounds for Allstate's denial of your fire loss claim. In addition, Allstate once again requests that you sign unaltered versions of the Authorizations and Non–Waiver Agreement, as referenced in our letter of March 11, 2004 (a copy of which is attached). Refusal to do so may serve also as a basis for the denial of your claim.

On April 9, 2004, Mr. Ganaway mailed a Certified, Return Receipt envelope to Mrs. Shiftlet. On April 10, 2004, Mrs. Shiftlet signed for the envelope. Allstate claims that the envelope contained the April 8 letter and a copy of the March 11 letter. Mrs. Shiftlet claims that the envelope contained *only* the March 11 letter, not the April 8 letter. She asserts that she did not receive the April 8 letter. The Shiftlets did not contact Mr. Ganaway or Mr. Weston or anyone at Allstate to reschedule their EUOs.

Having not heard from Mrs. Shiftlet, Allstate decided to deny the Shiftlet's claim for failure to cooperate with the investigation. By letter dated April 30, 2004, mailed May 3, 2004, Mr. Ganaway explained:

As a follow-up to my letter of April 8, 2004, I have been informed by the Weston Law Firm that Mrs. Shiftlet has not made arrangements for the completion of her Examination Under Oath (EUO), which she refused to conclude on April 4, 2004. In addition, Mr. Shiftlet has not contacted the firm to reschedule his EUO, which he previously refused to give on April 4, 2004. To date, you have

also both continued to refuse to sign unaltered Authorization and Non–Waiver forms allowing the company to obtain information and documents which are relevant to its investigation.... Mrs. Shiftlet's refusal [sic] complete her EUO, and her refusal to sign unaltered versions of the Authorization and Non–Waiver forms, constitute material breaches of the specific obligations as set forth above and the general terms of the policy, and I must therefore respectfully deny her claim for the fire damage to the mobile home as well as its contents.

This denial letter was sent to the Shiftlets via certified mail. Mrs. Shiftlet denies receiving the letter. Allstate asserts that the letter was properly addressed, and that Mrs. Shiftlet refused to accept the certified letter. It is uncontested that the letter was returned to Allstate on May 27, 2004, because it was unclaimed.

On June 4, 2004, Mr. Shiftlet contacted Mr. Ganaway and asked about the status of the claim. Mr. Ganaway informed Mr. Shiftlet that the claim had been denied. Mr. Ganaway then re-sent the letter of April 30 via Airbourne Express, overnight delivery.

After receiving the denial letter, the Shiftlets hired attorney Philip Middleton to represent them. On August 6, 2004, Mr. Middleton wrote to Allstate on behalf of the Shiftlets. In his letter, Mr. Middleton explained that the Shiftlets were now willing to submit to an examination under oath and would sign an unmarked copy of the Authorization. Allstate considered the Shiftlets' offer, but decided that their investigation had been prejudiced by the Shiftlets' prior refusal to cooperate. At the time the Shiftlets offered to cooperate, over eight months had passed since the night of the fire. Mr. Ganaway testified that timeliness is the key in any arson

investigation. Accordingly, Allstate decided to maintain the denial of the claim.

On November 3, 2004, Plaintiff initiated this action in United States District Court against Defendant Allstate Insurance for breach of contract, bad faith, and violation of South Carolina Code § 59–38–40.

## STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits how that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding whether there is a genuine issue of material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In ruling on a motion for summary judgment a district court must review the motion, even if unopposed, and determine from the facts it has before it whether the moving party is entitled to summary judgment as a matter of law. D.S.C. Civ. R. 7.06 ("If no memorandum in opposition is filed within fifteen (15) days of the date of service, the Court will decide the matter on the record ..."); *Custer v. Pan Am. Life Ins. Co.,* 12 F.3d 410, 416 (4th Cir.1993).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.' " *Hughes v.*

*Bedsole,* 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548.

## DISCUSSION

### I. Plaintiff's Motion for Summary Judgment on the Breach of Contract Claim

Considering the evidence in the light most favorable to Allstate, Plaintiff claims that she is entitled to her insurance benefits as a matter of law. Accordingly, she moves for summary judgment in her favor for her breach of contract claim and moves for summary judgment as to Allstate's declaratory judgment counterclaim.

█ The court begins its analysis by noting that this diversity case, which concerns a policy of insurance covering a mobile home located in South Carolina, is controlled by South Carolina law. 28 U.S.C. § 1332; *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (holding that a federal court sitting in diversity must apply the choice of law rules of the state in which it sits); S.C.Code Ann. § 38–61–10 ("All contracts of insurance on property ... in this State are considered to be made in the State ... and are subject to the laws of this State."). In South Carolina, the failure of the insured to comply with the obligations of the contract will release the insurer from liability. *Hodges v. State Farm Mut. Auto. Ins. Co.,* 488 F.Supp. 1057, 1061 (D.S.C.1980); *Tucker v. State Farm Mutual Auto. Insurance Company,* 232 S.C. 615, 103 S.E.2d 272 (1958); *Pharr v. Canal Insurance Co.,* 233 S.C. 266, 104 S.E.2d 394 (1958); *Crook v. State Farm Mutual Automobile Insurance Company,* 231 S.C. 257, 98 S.E.2d 427 (1957). But

avoidance of coverage will only be allowed where the insurer has shown that the failure to cooperate prejudiced the insurer's investigation of the case. *Squires v. National Grange Mutual Ins. Co.,* 247 S.C. 58, 145 S.E.2d 673 (1965); *Pharr,* 233 S.C. 266, 104 S.E.2d 394.

In this case, the Policy required the insured to fulfill the following obligations under "Section I–Conditions":

**3. What You Must Do After A Loss.** In the event of a loss to property that this policy may cover, you must do the following things:

d) *Give us for examination all books of accounts, bills, invoices and other vouchers, or certified copies, which we may reasonably request and permit us to make copies.*

f) As often as we reasonably require:

1) show us the damaged property; and

2) *submit to examinations under oath and give us signed statements.*

(Policy, Part 4, Sec. 1 (emphasis added).)

█ Under the law of South Carolina, the question whether or not the insured has met his obligation to cooperate is ordinarily one to be determined by the trier of the facts. *Pennsylvania Threshermen & Farmer's Mut. Cas. Ins. Co. v. Owens,* 238 F.2d 549, 552 (4th Cir.1956) (citing *Walker v. New Amsterdam Casualty Co.,* 157 S.C. 381, 154 S.E. 221 (1930)). In a case factually similar to this one, *Puckett v. State Farm General Ins. Co.,* 314 S.C. 371, 373–374, 444 S.E.2d 523, 524 (S.C.1994), during the investigation of a fire damage claim, the insured refused to submit to an Examination Under Oath, claiming that his two previous sworn statements were sufficient. The insurer denied his claim; thereafter, the insured filed an action for breach of contract and bad faith refusal to pay benefits under the policy. The insurer moved

that the action be dismissed on the ground that the claim was properly denied because the insured had failed to cooperate with its investigation by refusing the EUO. The Supreme Court of South Carolina, noting that forfeitures of insurance contracts are not favored in South Carolina, declined to construe a policy's requiring the insured to submit to Examinations Under Oath as establishing a condition precedent to suit. Nonetheless, the Court held that "an insured's failure to cooperate may bar *recovery* under a policy where the insurer can show prejudice therefrom." *Id.; accord Thompson v. West Virginia Essential Prop. Ins. Assoc.,* 186 W.Va. 84, 411 S.E.2d 27 (1991); *cf. Evans v. American Home Assurance Co.,* 252 S.C. 417, 166 S.E.2d 811 (1969) (mandatory third-party coverage). The *Puckett* Court concluded that "[w]hether Insurer suffered prejudice from [the Insured's] alleged failure to cooperate is an issue to be determined by the trier of fact on the merits of the action." 314 S.C. at 374, 444 S.E.2d at 524.

█ Clearly, many relevant facts in this case are contested, including whether the Shiftlets' conduct constituted failure to cooperate and whether Allstate's investigation was prejudiced by that failure. Certainly, considering the evidence in a light most favorable to Allstate, a reasonable juror could find that Mrs. Shiftlet's redaction of the Authorization and failure to complete her EUO constituted a failure to cooperate. Further, Allstate has presented sufficient evidence to support a finding that such failure prejudiced Allstate's interest by causing delays in a time-sensitive

arson investigation. As such, the court finds that genuine issues of fact exist as to whether Allstate is liable under the Policy. Accordingly, the court denies Plaintiff's request for summary judgment both as to Plaintiff's breach of contract claim and as to Defendant's counterclaim for declaratory judgment.

## II. Allstate's Motions for Partial Summary Judgment

### A. Bad Faith Denial of Insurance Claim [3] and Attorneys' Fees

Allstate claims that, considering the evidence in a light most favorable to Plaintiff, there is insufficient evidence to support Plaintiff's claim that Allstate denied her claim in bad faith. Accordingly, Allstate moves that this cause of action be dismissed via summary judgment.

█ Every contract contains an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. *Nichols v. State Farm Mut. Auto. Ins. Co.,* 279 S.C. 336, 306 S.E.2d 616 (1983). An insurer breaches this covenant of good faith implied within the insurance contract if the following elements are met: (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) a refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of the implied covenant of good faith and fair deal-

---

**3.** Plaintiff also summarily asserts that Allstate instituted the *investigation* of her insurance claim in bad faith. She claims that Allstate set out to deny the claim almost from the outset. Plaintiff offers no evidence that Allstate actually intended the investigation to be a sham; rather, Plaintiff asserts that because there was no legitimate reason to investigate the claim, the entire investigation must have

been a pretext to find a reason to deny the claim. Viewing the evidence in the light most favorable to Plaintiff, the court finds that this claim is without merit. Considering the Shiftlets' prior claims filed with Allstate, the nature of the fire, and the unusual circumstances surrounding the fire, the court finds that Allstate made its decision to investigate the claim in good faith.

ing arising under the contract; (4) causing damage to the insured. *Bartlett v. Nationwide Mut. Ins. Co.,* 290 S.C. 154, 348 S.E.2d 530 (Ct.App.1986); *Nichols,* 306 S.E.2d at 616. Generally, under South Carolina law, an insured may recover damages for bad faith denial of coverage if she proves that there was no reasonable basis to support the insurer's decision to deny benefits under a mutually binding insurance contract. *Ocean Winds Council of Co-Owners, Inc. v. Auto-Owners Ins. Co.,* 241 F.Supp.2d 572, 576 (D.S.C.2002) (quoting *Tadlock Painting Co. v. Maryland Cas. Co.,* 322 S.C. 498, 473 S.E.2d 52, 53 (1996)). Stated differently, if there was an objectively reasonable ground for contesting an insurance claim, there is no bad faith in the denial of it. *Mixson, Inc. v. Am. Loyalty Ins. Co.,* 349 S.C. 394, 562 S.E.2d 659 (Ct.App.2002). Whether such an objectively reasonable basis for denial existed depends on the circumstances existing at the time of the denial. *State Farm Fire and Cas. Co. v. Barton,* 897 F.2d 729 (4th Cir.1990) (interpreting South Carolina law). When conflicting evidence is presented, summary judgment on the issue of bad faith is generally inappropriate; however, a court may grant summary judgment on this issue if, viewing the evidence in the light most favorable to the plaintiff, no reasonable finder of fact could have found for the plaintiff on her bad faith claim. *See Foster v. Tandy Corp.,* 828 F.2d 1052, 1055 (4th Cir.1987).

▮ In this case, it is uncontested that, at the time of the denial, the Shiftlets would not sign an unredacted version of the Authorization, despite having been warned that such refusal compromised the investigation and endangered their claim. It is also uncontested that the Shiftlets had not completed their EUOs as required under the Policy and as requested in the April 8 letter. Considering the evidence in a light most favorable to Plaintiff, a jury could find that Mrs. Shiftlet did not receive the April 8 letter, and was therefore unaware of the consequences of failing to complete her EUO within ten days. Plaintiff presents no evidence, however, that Allstate should have known that the mailing was deficient. When Allstate received confirmation that Mrs. Shiftlet accepted the certified envelope allegedly containing the April 8 letter on April 10, it is uncontested that Allstate reasonably assumed that Mrs. Shiftlet had notice of her obligation to return within ten days. When she did not so return, and considering the totality of the circumstances, Allstate determined that she was not cooperating with the investigation, and denied her claim.

The law of South Carolina clearly states that a the failure of the insured to comply with the obligations of the contract releases the insurer from liability if such failure prejudices the rights of the insurer. *Hodges,* 488 F.Supp. at 1061. Under the terms of the subject Policy, Plaintiff was obliged to cooperate with the investigation, including providing access to certain financial records and providing EUOs at the request of Allstate. (Policy, Part 4, Sec. 1.) Even viewing the evidence as the court must, Plaintiff had failed to fulfill either of these obligations at the time Allstate denied Plaintiff's claim on April 30, 2003. Accordingly, at that time, Allstate had an objectively reasonable ground for contesting Plaintiff's insurance claim. Allstate clearly did not improperly contest coverage, nor did Allstate act in willful, wanton, or reckless disregard of Plaintiff's rights under the Policy. As such, the court finds that a reasonable jury could not find that Allstate denied the claim in bad faith. The court therefore grants summary judgment in favor of Allstate on Plaintiff's cause of action for bad faith denial of an insurance claim.

Plaintiff also asserts a cause of action for attorneys' fees under South Carolina Code Section 38–59–40, which states that "[i]n the event of ... damage which is covered by a policy of insurance ... and the refusal of the insurer ... to pay the claim within ninety days after a demand has been made by the holder of the policy or contract and a finding on suit of the contract made by the trial judge *that the refusal was without reasonable cause or in bad faith,* the insurer ... is liable to pay the holder, in addition to any sum or any amount otherwise recoverable, all reasonable attorneys' fees for the prosecution of the case against the insurer." Because the court finds that Allstate's refusal to pay the claim was not without reasonable cause or in bad faith, the court further finds that Plaintiff is not entitled to attorneys' fees under Section 38–59–40. Accordingly, the court dismisses this cause of action.

### B. Intentional Infliction of Emotional Distress or Outrage

Allstate also asserts that, considering the evidence in a light most favorable to Plaintiff, there is insufficient evidence to support Plaintiff's claim for intentional infliction of emotional distress or outrage. The court agrees.

■ The South Carolina Supreme Court has held that in order to recover for the intentional infliction of emotional distress,

a plaintiff must establish that (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so 'extreme and outrageous' as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community;' (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotion-

al distress suffered by the plaintiff was 'severe' so that 'no reasonable man could be expected to endure it.' Although 'severe' emotional distress is usually manifested by 'shock, illness or other bodily harm,' such objective symptomatology is not an absolute prerequisite for recovery of damages for intentional ... infliction of emotional distress.

*Ford v. Hutson,* 276 S.C. 157, 162, 276 S.E.2d 776, 778–779 (S.C.1981). It is for the court to decide whether a defendant's conduct may be reasonably described as so extreme and outrageous as to warrant recovery. *Todd v. South Carolina Farm Bureau Mut. Ins. Co.,* 283 S.C. 155, 321 S.E.2d 602 (Ct.App.1984). Only where reasonable persons could differ is the question for the jury. *Id.*

■ Considering the above factors, Plaintiff has clearly not presented sufficient evidence to support a claim of intentional infliction of emotional distress. As the court discussed above, Allstate had an objectively reasonable ground for investigating and contesting Plaintiff's insurance claim. Viewing the evidence and all inferences which may reasonably be drawn therefrom in the light most favorable to Plaintiff, the court finds that at no point in investigating or denying the claim could Allstate's conduct reasonably be considered "so extreme and outrageous as to exceed all possible bounds of decency." *Id.* Because Plaintiff fails to make a showing sufficient to establish outrageous conduct, an element essential to an intentional infliction of emotional distress cause of action, summary judgment is appropriate.

Further, while emotional distress damages related to a bad faith cause of action in South Carolina are recoverable when the distress was related to the refusal to pay, *Barton,* 897 F.2d at 732–33, the court finds that Allstate did not deny Plaintiff's claim in bad faith. Accordingly, Plaintiff's

claim for emotional distress damages, to the extent the claim relies on a theory of bad faith denial, also necessarily fails.

### C. Damages

■ Allstate argues that many of the damages alleged by Plaintiff may not be recovered and moves that the court rule that such damages are not available. The court now clarifies which damages could be available to Plaintiff under the remaining cause of action.

■ Plaintiff's only remaining claim is for breach of insurance contract. Generally, liability for breach of an insurance contract is dependent upon the terms specified in the contract. *Jacobs Press, Inc. v. Hartford Steam Boiler Inspection & Ins. Co.*, 107 F.3d 866 (4th Cir. March 4, 1997) (Table, Nos.94–1046, 94–1087) (interpreting South Carolina law). As such, Plaintiff may claim damages in the amount of the contractually stated amount of coverage indicated on the face of the Policy together with accrued interest. *Hutson v. Continental Assur. Co.*, 269 S.C. 322, 237 S.E.2d 375 (S.C.1977).

■ In addition to the specified Policy amount, Plaintiff also asserts that she is entitled to those damages incurred by her as a consequence of Allstate's breach of the Policy. One who breaches a contract to pay money is generally liable only for the amount of money specified in the contract itself and is not liable for consequential damages.[4] However, the South Carolina Supreme Court has held "where the money was to be paid for a special purpose which was known to the party agreeing to make the payment, damages directly and naturally resulting from the breach and

therefore supposed to have been in contemplation of the parties may be given in addition to interest." *Id.* (citing 22 Am. Jur. Damages § 64). Those damages in the contemplation of the parties, known as special damages, must be particularly alleged and proved. *Id.* (citing *Kline Iron & Steel Co. v. Superior Trucking Co., Inc.*, 261 S.C. 542, 201 S.E.2d 388 (S.C.1973); *see also Holmes v. Nationwide Life Ins. Co.*, 273 S.C. 711, 258 S.E.2d 924 (S.C. 1979)) (holding that trial judge erred in charging that insured could recover consequential damages on breach of insurance contract cause of action; where special damages were not pled, judge should have charged the jury that the amount covered in the policy was the only amount recoverable). The principle is thus stated in *Hobbs v. Carolina Coca–Cola Bottling Co.*, 194 S.C. 543, 10 S.E.2d 25 (S.C.1940): "But where damages do not necessarily result from the act complained of, and consequently are not implied by law, the plaintiff must state the particular damage sustained in order to introduce testimony in regard to it. The rule is to avoid surprise."

In this case, Plaintiff's Amended Complaint fails to plead any special damages as a result of Allstate's failure to pay the claim. The court therefore finds that Plaintiff is not entitled to special damages and may only recover the stated Policy amount together with accrued interest.

### *CONCLUSION*

It is therefore **ORDERED,** for the foregoing reasons, that Plaintiff Kathryn Shiftlet's Motion for Summary Judgment is

---

**4.** As the Supreme Court in *Hutson* made clear, "[t]he rule in contract actions is to be distinguished from the rule in tort actions. In tort actions, damages may be recovered for all injuries which proximately follow, whether or not such injuries could have been anticipated or contemplated. In breach of contract actions, only such damages as may reasonably be supposed to have been in the contemplation of both parties at the time the contract was made may be collected."

**DENIED.** It is further **ORDERED** that Defendant Allstate Insurance Company's Motions for Partial Summary Judgment are **GRANTED.** The remaining causes of action before the court are Plaintiff's claim for breach of insurance contract and Defendant's counterclaim for declaratory judgment.

AND IT IS SO ORDERED.